Larry SPOHN *v.* STATE of Arkansas

CR 92-500                    837 S.W.2d 873

Supreme Court of Arkansas
Opinion delivered September 28, 1992

*Daniel D. Becker* and *Terri Harris*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Didi Sallings*, Asst. Att'y Gen., for appellee.

Robert L. Brown, Justice. The appellant, Larry Spohn,

was convicted of first degree murder and sentenced to forty years in prison. He argues on appeal that the circuit court erred in two respects. First, his expert witness was foreclosed from testifying about the effect of blackouts resulting from alcoholism on specific intent to commit murder, and, secondly, the court allowed the prosecutor to interrogate Spohn about a past bad act on cross-examination. The appellant's arguments are not persuasive, and we affirm.

Spohn and the victim, Dr. Mary Lyn Bryden, operated a correspondence-school business in Dallas, Texas and had been involved in a personal relationship for several months. On June 15, 1991 they left Dallas and drove in separate cars to Hot Springs Village for a month's vacation. They arrived in Hot Springs late that afternoon and witnesses described Spohn as intoxicated. Later that night they came to the Village and Spohn testified that he continued to drink beer. Sometime during the course of the evening, Dr. Bryden was on the telephone. After she hung up, Spohn asked her whom she had been talking to and told her not to lie to him. She hit him, and he testified that he does not know what happened from that point forward. Dr. Bryden died from manual strangulation.

About noon the next day, Spohn went to the house of a friend, Kim Redding. Redding testified that Spohn was very intoxicated and that Spohn told him that he had "big trouble." Spohn further told Redding that he had a body in the trunk. He then wanted to know if Redding knew anyone with a meat grinder. The two men drove to the Village and entered the rented house, whereupon Spohn called out, "Honey, are you here?" Redding subsequently checked the car trunk and found the body of Dr. Bryden. He notified the Garland County Sheriff's office, and Spohn was arrested and charged with first degree murder the next day. After a two-day trial, he was convicted as charged and sentenced.

For his first point, Spohn contends that his expert witness on blackout alcoholism, Dr. Douglas Stevens, was impermissibly curtailed in his testimony by the circuit court. Dr. Stevens testified that Spohn had been a blackout alcoholic from "a fairly early age." Dr. Stevens further testified that with this malady "you go on automatic pilot and the conscious mind no longer is in

control and the conscious mind doesn't process or retain what happens." Defense counsel then asked Dr. Stevens: "While someone is in one of these alcoholic blackouts, could they form intent, specific intent?" An objection from the prosecution ensued on the basis that the question posed was the ultimate question for the jury to determine.

The circuit court sustained the objection but did so on the basis that the testimony was irrelevant since voluntary intoxication was not a defense to criminal prosecutions. Spohn then made a proffer of Dr. Stevens's testimony that an individual does not form intent during a blackout. The court again sustained the state's objection, stating that it would be an opinion on the ultimate issue. He added: "To me, it's the back door," apparently in reference to Spohn's attempting to invoke an intoxication defense.

■ The court was correct in its ruling. Purposeful conduct, as required for a first degree murder conviction, was shown in this case by the manual strangulation of Dr. Bryden. In 1986, we declared that voluntary intoxication was no longer an available defense to criminal prosecutions. *White* v. *State*, 290 Ark. 130, 717 S.W.2d 704 (1986); *see also Mauppin* v. *State*, 309 Ark. 235, 831 S.W.2d 104 (1992); *Easter* v. *State*, 306 Ark. 615, 816 S.W.2d 602 (1991); *Cox* v. *State*, 305 Ark. 204, 808 S.W.2d 306 (1991). Testimony from Dr. Stevens about blackouts was simply another means of using voluntary intoxication as a defense. This was irrelevant in light of our decision in *White*. The appellant argues that *White* does not apply to specific intent crimes such as we have here, but the appellant is wrong. *White* clearly abolishes the defense of voluntary intoxication for all criminal prosecutions, and the court was correct in its ruling.

The appellant's second point concerns the question of evidence of a prior bad act, which is precluded under Arkansas Rule of Evidence 404(b). On direct examination, Spohn testified that there was never any violence in the relationship with Dr. Bryden. He said that he never had thoughts of harming the victim. He then added: "I wouldn't hurt her for the world. I loved her. I wanted to marry her." Spohn also testified that he had never been charged with an act of violence. On cross-examination, the prosecutor queried about a woman in Sedona, Arizona and then

asked: "Did you ever hold her against her will while you were in Sedona?" Spohn objected and the circuit court noted that the defense had portrayed Spohn as a nonviolent person on direct examination. The court then overruled the objection. Spohn answered the question by saying that he "had another blackout in Sedona."

█ █ It is true as a general rule that proof of other crimes or bad acts is never admitted when its only relevancy is to show that the accused is a person of bad character. Ark. R. Evid. 404(b); *see also Sweatt* v. *State*, 251 Ark. 650, 473 S.W.2d 913 (1971); *Alford* v. *State*, 223 Ark. 330, 266 S.W.2d 804 (1954). However, in *McCormack on Evidence*, the following statement of the law is made relative to character testimony:

> Ordinarily, if the defendant chooses to inject his character into the trial in this sense, he does so by producing witnesses who testify to his good character. By relating a personal history supportive of good character, however, the defendant may achieve the same result. Whatever the method, once the defendant gives evidence of pertinent character traits to show that he is not guilty, his claim of possession of these traits - but only these traits - is open to rebuttal by cross-examination or direct testimony of prosecution witnesses.

*McCormack*, Vol. 1 § 190, p. 816 (1992).

█ Spohn raised the character issue in the case before us. He testified that there was no violence in the relationship and that he never had been charged with a criminal offense. The clear implication was that violence was not a character trait. By testifying as he did, he invited a retort from the state on the peacefulness of his character, and the state obliged. We have held in a civil case that testimony of a witness relating to reputation for peacefulness opened the door to the admission of rebuttal evidence. *Pursley* v. *Price*, 283 Ark. 33, 670 S.W.2d 448 (1984). The same principle applies in this criminal case. There was no abuse of discretion in admitting the testimony.

Affirmed.