Michael Ryan WEBB *v.* STATE of Arkansas

CR 96-941                                      935 S.W.2d 250

Supreme Court of Arkansas
Opinion delivered December 16, 1996

*Dover & Dixon*, by: *James R. Rhodes, III*, and *Jack T. Lassiter*, for appellant.

*Winston Bryant*, Att'y Gen., by: *David R. Raupp*, Asst. Att'y Gen., for appellee.

Tom Glaze, Justice. Appellant Michael Webb brings this appeal from his convictions for the first-degree murder of Jason Hatcher and first-degree battery of Timothy McGarity, and his respective sentences for each crime of forty and six years' imprisonment. This is the third appeal this court has had involving Hatcher's death and McGarity's battery. *See Carter* v. *State*, 324 Ark. 249, 921 S.W.2d 583 (1996); *Jones* v. *State*, 321 Ark. 649, 907 S.W.2d 672 (1995). Webb's points for reversal are that the trial court erred in denying his directed-verdict motions and in refusing his proffered "mere presence" instruction.

■ We first dispose of Webb's directed verdict motion issue because it was not properly preserved below. At the close of the State's case, Webb moved for a directed verdict based on insufficiency of the evidence, which the trial court denied. After the jury was instructed but before it began deliberations, Webb renewed his motion for directed verdict, stating the evidence was insufficient to prove the State's charges and failed to show he was an accomplice. As we held in *Claiborne* v. *State*, 319 Ark. 602, 892 S.W.2d 511 (1995), a motion for directed verdict must be renewed at the end of the "close of the case," Ark. R. Crim. P. 33.1, and an attempt to renew such motion after the jury has been charged is not timely.

We now turn to Webb's second point which undoubtedly is the main argument on appeal. He argues that, at the beginning of the trial court's consideration of the instructions submitted by the parties, he proffered the following "mere presence" instruction:

### DEFENDANT'S REQUESTED INSTRUCTION NO. 2

Mere presence, acquiescence, silence, or knowledge that a crime is being committed, in the absence of a legal duty to act, is not sufficient to make one an accomplice. Therefore, if you find that Ryan Webb was only present while a crime was being committed and did not have a legal duty to act, then he is not an accomplice. *Ford* v. *State*, 296 Ark. 8, 753 S.W.2d 258 (1988).

The State objected to Webb's foregoing instruction, urging it was not an AMCI 2d instruction. The State further contended that AMCI 2d 401 on accomplice liability was a correct statement of the law, and Webb's "mere presence" instruction simply was unnecessary. The trial court agreed with the State, and denied Webb's proffer.

On appeal, Webb argues that, although AMCI 2d does not contain a "mere presence" instruction, the rule of law contained in his proposed instruction is recognized in the comment to AMCI 2d 401, the accomplice instruction. Citing other jurisdictions, Webb asserts the "mere presence" instruction is commonly given in criminal cases when warranted. *See Devitt & Blackmar*, § 16.09; *United States* v. *Avecedo*, 842 F.2d 502 (1st Cir. 1988); *United States* v. *Love*, 767 F.2d 1052 (4th Cir. 1985); *United States* v. *Keefer*, 799 F.2d 1115 (6th Cir. 1986). Webb argues the record warranted the trial court's giving a "mere presence" instruction and its failure constituted a due process violation.[1] We cannot agree.

First, we disagree with Webb's assertion that a "mere presence" instruction would have been warranted even if it was included in AMCI2d. Our law is well settled that there is no error in the refusal to give an instruction where there is no evidence to support the giving of that instruction. While we need not discuss all

---

[1] From the record, we fail to find where Webb raised a due process issue, but that failure is insignificant since we hold the evidence is insufficient to support a "mere presence" instruction, even it it was an AMCI2d instruction.

the evidence at Webb's trial, we do relate that relevant proof necessary to decide the issue. *Blaney v. State*, 280 Ark. 253, 657 S.W.2d 531 (1983); *Couch v. State*, 274 Ark. 29, 621 S.W.2d 694 (1981).

Timothy McGarity and Clay Cochran departed McGarity's vehicle on the Harvest Foods' parking lot in Sherwood, and started a fight with James Gross and Stan Messer. Other vehicles, containing friends of McGarity and Cochran, had followed McGarity's car onto the lot and those friends congregated around the fight. A blue Honda Accord carrying friends of Gross and Messer came on the lot and stopped in the vicinity of the fight. Gunshots were fired and Jason Hatcher, who had been in a vehicle following McGarity's vehicle, was fatally wounded. McGarity was also shot and wounded in the leg. Witnesses identified Chad Jones, an occupant of the Honda as having a handgun. Another witness saw Gross shooting a gun. No one identified Webb as being present on the parking lot.

The State's evidence connecting Webb to the shooting centered on the testimony of Monica Parker and Jessica Fleming, who testified that they were visiting at a friend's apartment on the night Hatcher had been shot. Webb, Jones, Jason Carter, and James Gross entered the apartment and were talking about a fight they just had. They said Webb was carrying a long-barreled gun and when he sat down in a recliner he laid the gun down beside him. Parker and Fleming stated Webb said something to the effect that "I shot someone" or "I think I got one." When Webb left with his friends, Parker and Fleming said he took the gun with him. Webb's apartment was searched the next day by officers, who found a .30 caliber carbine. Webb concedes that expert testimony linked the .30 caliber casings found at the crime scene to Webb's carbine.

In sum, Webb fails to point to any evidence that showed he was merely present at the crime scene when Hatcher and McGarity were shot. Instead, the only evidence presented showed he, indeed, had been present at Harvest Foods' parking lot at the time of the shootings, but in being present, he shot someone and afterwards was overheard talking about it.

In these circumstances, we conclude Webb would not have been entitled to a "mere presence" instruction even if it had been in AMCI2d. In addition, we emphasize, too, that our law is well settled that, when a trial court determines that the jury be instructed on an issue, the model criminal instructions shall be used

unless the trial court concludes it does not accurately state the law. *Moore* v. *State*, 317 Ark. 630, 882 S.W.2d 667 (1994). Here, AMCI2d 401 on accomplice liability was clearly applicable to the facts of this case, and required no further explanation of the law.[2]

---

[2] We note that Webb also argued that Parker's and Fleming's testimonies were unreliable because, on cross examination, they acknowledged they may have told an officer that Webb said, "Yeah, *we* shot some people." Whether Webb had been overheard to say "I" or "we" does little to help his "mere presence" argument and only underscores he and someone else were implicated in the shootings.