Robert D. STANDRIDGE *v.* STATE of Arkansas

CR 96-1468                                           951 S.W.2d 299

Supreme Court of Arkansas
Opinion delivered September 11, 1997

John Joplin, for appellant.

*Winston Bryant*, Att'y Gen., by: *David R. Raupp*, Asst. Att'y Gen., for appellee.

W.H. "DUB" ARNOLD, Chief Justice. Appellant was tried and found guilty of first-degree murder and sentenced to life imprisonment. Appellant raises four points for reversal in this appeal. We affirm.

On August 6, 1995, appellant met Rick Vaughan, Phillip Mitchell and Doug Gillespie at a bar in Fort Smith. The three men had spent most of the day drinking together at Glen Vaughn's house, and they invited appellant to return there with them. The men drank at the house for approximately an hour and decided to go to a bar. After calling a cab, the men waited on the front porch

for the cab to arrive. At some point, appellant and Doug Gillespie began arguing on the porch. Rich Vaughn and Phillip Mitchell witnessed Gillespie and appellant rush toward each other. When the two men separated, both Phillip Mitchell and Rick Vaughn noticed that Doug Gillespie had been stabbed. At that time, appellant and Phillip Mitchell left the house on foot and walked through an alley to a local convenience store.

The Fort Smith Police Department was called to investigate the stabbing. The victim, Doug Gillespie, had been taken to the hospital where he later died from the wound. Detective Jeff Barrows interviewed Rick Vaughn who informed him that appellant had stabbed Gillespie and had left the scene on foot along with Phillip Mitchell. Vaughn provided a description of appellant.

Officer Rodney Reed began patrolling the area and noticed two people walking, one of whom matched the description of the suspect. The officer stopped the two men and asked appellant if his name was Bobby Standridge. Appellant answered in the affirmative; the officer told the men to place their hands on the police car; immediately, appellant told the officer that his companion, Phillip Mitchell, "had nothing to do with it. . . ." The officer arrested both men for public intoxication; both men were then taken into custody and transported to the police department where they were separated. Officer Reed testified that, although it was evident that appellant had been drinking, he was functional, he could walk and talk without hesitation, he was aware of his surroundings, and there was no stammer in his voice when he talked.

Detective Barrows testified that he apprised appellant of his *Miranda* rights and that he presented appellant with a waiver form that contained a series of five questions regarding whether the recipient understood his rights. Appellant was asked each question and he answered affirmatively each time that he understood his rights. The detective wrote the answer "yes" following each question that appellant answered in the affirmative; appellant then signed his initials beside each "yes" answer. Appellant indicated that he had completed fourteen (14) years of schooling and was able to read and write. Appellant then was questioned about the

incident. The interview was taped and made a part of the record. During the interview, appellant indicated both that he did stab the victim and that he did not stab the victim.

During one portion of the interview, the following exchange occurred:

| | |
|---|---|
| DETECTIVE BARROWS: | Okay. Bobby, what I'd like you to do is I'd like to hear your side of the story. I've, I've interviewed two other people so far and have heard some incriminating things about you, and Bobby, as we've discussed before, there's reasons to do everything and there's reasons that, that uh things are done good and bad and I know what happened tonight. There was a reason behind that. What I want to know is what your involvement was there at. . . . |
| APPELLANT: | I, I ain't ready to talk. |
| OFFICER: | . . .at 623 North 18th. |
| APPELLANT: | It's my fault, I ain't got any reason. |

Following this exchange, appellant continued answering questions. Several times, he indicated that he stabbed Gillespie. He described the knife to the detective and indicated that he stabbed Gillespie in the stomach. He then told the detective that he did not have a knife and that he did not stab Gillespie.

Appellant challenges the trial court's admission of the statement based upon the contention that he had requested the questioning to stop and that his statement saying he wasn't ready to talk invoked his *Miranda* rights. Additionally, he challenges the statement contending that it was involuntary due to his intoxication.

During the trial, Phillip Mitchell and Rick Vaughn testified that they had witnessed the altercation between appellant and Gillespie, but neither actually saw appellant with a knife. During Phillip Mitchell's testimony, he indicated that he left the scene with appellant because he was scared that appellant would stab him if he did not go with him. Appellant contends a question posed by the prosecutor to Mitchell presented the jury with impermissi-

ble character evidence that was prejudicial to him and warrants reversal.

Appellant proffered the expert testimony of Dr. Joe Alford of the Arkansas Department of Human Services, Division of Mental Health Services, who was to testify on the affects of alcohol on a person's mental ability to reason and form intent. In a proceeding held in chambers out of the hearing of the jury, appellant argued that the expert testimony should be admitted because such evidence was necessary to show that he did not have the requisite intent for the charge of murder. The trial court did not allow such testimony, and appellant contends that the exclusion of this testimony violated his right to due process.

Appellant also challenges a jury instruction submitted that reads: "Voluntary intoxication is not a defense to any criminal offense in Arkansas." Appellant contends that this jury instruction violates his right to due process and that by offering this instruction, the trial court improperly commented on the evidence in the case.

## I. Custodial Statement

■ Appellant claims his statement "I ain't ready to talk" effectively invoked his right to remain silent pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966). During custodial questioning, an individual may cease all questions by indicating that he wishes to remain silent. We have held that custodial statements are presumed to be involuntary and the burden of proof is placed on the State to show that they are not. *Noble v. State*, 319 Ark. 407, 892 S.W.2d 477 (1995). We independently review the "totality of the circumstances" to determine whether there was coercion and whether a statement was made in a knowing and intelligent manner. *Thomas v. State*, 315 Ark. 504, 868 S.W.2d 483 (1994).

In this instance, we must examine whether appellant made a clear waiver of his rights or whether he invoked his right to remain silent by his statement that he wasn't ready to talk. Does appellant's statement amount to an invocation of his right to

remain silent? Perhaps so, but we must also determine if any subsequent statements implied a waiver of those rights.

■ In *Bowen v. State*, 322 Ark 483, 911 S.W.2d 555 (1995), we discussed *Davis v. United States*, 512 U.S. 452 (1994), in which the Supreme Court held that the invocation of the right to counsel must be made with specificity. In *Bowen*, we held that there was "no distinction between the right to counsel and the right to remain silent with respect to the manner in which it must be effected." 322 Ark. at 504, 922 S.W.2d at 565. Following *Bowen*, the right to remain silent must be made unequivocally, and answering questions following a statement that attempts to invoke the right to remain silent may waive that right by implication. *Id.*, see also *Bryant v. State*, 314 Ark. 130, 862 S.W.2d 215 (1993); *Ward v. State*, 308 Ark. 415, 827 S.W.2d 110 (1992); *Duncan v. State*, 291 Ark. 521, 726 S.W.2d 653 (1987).

■ Appellant acknowledged that he understood that he had the right to remain silent. The detective then began questioning him. He once interrupted the detective in the middle of a question with the statement that he wasn't ready to talk. The detective completed his question, and appellant immediately answered it. Appellant continued answering questions for a lengthy period of time following that exchange. Never again did appellant indicate that he did not want to continue the interview, nor did he attempt to invoke his right to remain silent. Therefore, the statement by appellant that he wasn't ready to talk did not constitute an unequivocal invocation of his right to remain silent. Instead, it implied that he would be ready to talk at some point. This distinction becomes less important when coupled with the fact that appellant continued to answer questions after making the statement. By continuing with the interview, appellant waived his right to remain silent.

■ Appellant secondly challenges the custodial statement on the ground that the statement was not voluntary because appellant was intoxicated. In *Kemp v. State*, 324 Ark. 178, 198, 919 S.W.2d 943, 953, *cert. denied*, 117 S.Ct. 436, 136 L.Ed.2d 334 (1996), the appellant challenged the admissibility of a custodial statement based upon the contention that it could not have been

voluntary because he was "so intoxicated that he did not know-ingly, intelligently, and voluntarily waive his rights." We held that "whether an accused had sufficient mental capacity to waive his constitutional rights, or was too incapacitated due to drugs or alcohol to make an intelligent waiver is a question of fact for the trial court to resolve." *Id.* at 198, *citing Phillips v. State*, 321 Ark. 160, 900 S.W.2d 526 (1995). Additionally, in *Kemp*, we held that intoxication goes to the credibility of a statement, not its admissibility. *Id.*

▮ In this case, appellant contends that he was so intoxicated that he could not knowingly and intelligently waive his right to remain silent. Following *Kemp*, appellant's argument is meritless. We affirm the trial court's admission of the statement.

## II. Jury Instruction

Appellant contends that the trial court erred in submitting a jury instruction which reads: "Voluntary intoxication is not a defense to any criminal offense in Arkansas." Appellant claims that this instruction denied him due process of law and that this instruction was an improper comment on the evidence.

In *White v. State*, 290 Ark. 130, 717 S.W.2d 784 (1986), we determined that the common-law rule allowing the use of voluntary intoxication as a defense no longer applies in Arkansas, thus voluntary intoxication is not a valid defense to any criminal charge in this state. First, appellant attempts to distinguish the fact that while voluntary intoxication is not a defense, it should be considered as a factor in the mental state of a defendant when a defendant is charged with a specific intent crime. Appellant argues that his due process rights were violated by the trial court's instruction that voluntary intoxication is not a defense to the specific-intent crime, first-degree murder. In *White*, we discussed courts' attempts to distinguish between "knowing" crimes and "purposeful" crimes in the application of the voluntary intoxication rule. We declared that voluntary intoxication is not a defense to any criminal prosecution and determined that the distinction between specific-intent crimes and other crimes was of "no con-

sequence because th[e] defense is no longer available" 290 Ark. at 137.

Appellant's attempt to distinguish specific-intent crimes from other crimes is analogous to the argument utilized by the appellant in *Spohn v. State*, 310 Ark. 500, 837 S.W.2d 873, 874 (1992). Spohn attempted to distinguish specific-intent crimes from purposeful-conduct crimes and contended that the *White* decision did not apply to specific-intent crimes. We held that the *White* decision applies to all crimes, regardless of the requisite intent, and that the defense of voluntary intoxication is not available. *Spohn, id.*, at 874. The argument by appellant is clearly negated by the *White* and *Spohn* decisions, and we affirm the trial court.

Secondly, appellant contends that the jury instruction regarding voluntary intoxication was an impermissible comment on the evidence by the trial court. Appellant contends the trial court erred in submitting this instruction in reliance on the court of appeals decision in *Gilkey v. State*, 41 Ark. App. 100, 848 S.W.2d 439 (1993). Appellant further contends that the court of appeals erroneously applied *White* in *Gilkey*.

In *Gilkey*, appellant challenged the trial court's instructing the jury that voluntary intoxication is not a defense to first-degree murder or battery claiming that such an instruction was an improper comment on the evidence. The court of appeals held that the jury instruction was proper and well within the boundaries established by the *White* decision. The court of appeals noted that there had been evidence about appellant's drinking on the day of the shooting, and that under those circumstances, the "State was entitled to an instruction informing the jury of the law regarding evidence of intoxication so as to avoid any confusion." *Id.* at 104. The court of appeals was correct in its application of *White*.

In the case before us, there was evidence relating to appellant's drinking on the day of the stabbing. The trial court was correct in including an instruction to educate the jury on the rule of law regarding voluntary intoxication. The instruction was straightforward, and it properly stated the law. In no way did the

trial court comment on whether the defendant actually was intox-
icated, nor did the court comment on the mental capacity of the
defendant. The trial court merely instructed the jury on the rule
of Arkansas law that voluntary intoxication is not a defense. We
find no error in the trial court's jury instructions.

### III. Expert testimony

Appellant contends that he was denied due process by the
trial court's excluding the testimony of Dr. Joe Alford regarding
the effect alcohol can have on an individual's ability to think
clearly. Appellant claims this testimony was crucial to negate the
existence of the requisite mental state.

In *Spohn v. State, supra,* we examined the admissibility of evi-
dence relating to voluntary intoxication. The appellant in *Spohn*
challenged the exclusion of testimony regarding blackouts result-
ing from his alcoholism because he contended that he could not
form the intent to commit murder. We upheld the trial court's
exclusion of such testimony based upon the fact that evidence
regarding voluntary intoxication is "irrelevant in light of our deci-
sion in *White*." 310 Ark. at 502.

█ Following *Spohn,* the expert testimony proffered by
appellant is clearly irrelevant, so there is no merit to the conten-
tion that the trial court abused its discretion in this ruling.

### IV. Motion for a Mistrial

Appellant's final argument is that the trial court erred in
denying his motion for a mistrial. This motion was made based
on the contention that prejudicial character evidence was offered
during the testimony of Phillip Mitchell. Mitchell testified that he
was present during the altercation between appellant and Gillespie;
he stated that he noticed that the victim had been stabbed,
although he did not see appellant holding a knife. He claimed
that he left the scene with the defendant because he was scared of
him. The prosecutor then asked if he had ever seen the defendant
with a knife before.

Prior to the witness answering the question, defense counsel objected and a sidebar was conducted out of the hearing of the jury. The question was withdrawn, and the questioning of the witness continued. During the sidebar, defense counsel motioned for a mistrial, but did not request an admonishment to the jury regarding the question.

Appellant contends that a mistrial should have been declared because this question entered evidence of his character for the purpose of proving that he acted in conformity therewith in violation of Ark. R. Evid. 404(a). Appellant contends that this question resulted in manifest prejudice.

A trial court has wide discretion in granting or denying a mistrial. A ruling denying a mistrial will not be disturbed absent a showing of an abuse of discretion or manifest prejudice to the moving party. *Wilkins v. State*, 324 Ark. 60, 918 S.W.2d 702 (1996); *King v. State*, 317 Ark. 293, 877 S.W.2d 583 (1994). In *Banks v. State*, 277 Ark. 28, 639 S.W.2d 509 (1982), a question was asked to which the defense counsel objected and moved for a mistrial. The question was not answered, and the trial court denied the motion for a mistrial based upon the fact that there was no inference to the jury since the question was not answered. We upheld the trial court's ruling because "the jury received absolutely no prejudicial information." *Id*. at 32.

This case is analogous to *Banks*. The question was asked which could have led to a prejudicial comment; however, it was never answered. There is no evidence that appellant has been prejudiced in any manner. In fact, the jury received no potentially prejudicial information. There is no evidence to suggest that the trial court abused its discretion by ruling on this motion.

Also, there is no evidence that the defense counsel requested an admonition to the jury to disregard the question. In *Owens v. State*, 325 Ark. 110, 926 S.W.2d 650 (1996) we held that a "mistrial is an extreme remedy which should only be granted when justice cannot be served by continuing the trial." *Id*. at 659, *citing Clayton v. State*, 321 Ark. 602, 906 S.W.2d 290 (1995). In *Owens*, the defendant moved for a mistrial during the sentencing phase of a trial when the prosecutor mentioned that the defendant had

been found guilty of possession of a controlled substance. The defense contended that the prosecution impermissibly brought up a prior conviction; however, the prosecution maintained that it was referring to the underlying offense being sentenced. The trial court denied the motion for a mistrial but instructed the prosecutor to clarify to the jury that he was referring to the conviction for the underlying offense.

*Owens* allows trial courts discretion to correct prejudicial statements in order to avoid the "extreme remedy" of a mistrial. In the case before us, the defense counsel did not request an admonition or clarification; the witness did not actually answer the question, thus there was no prejudicial information before the jury. There is no merit to the contention that the trial court abused its discretion in denying the motion for a mistrial.

In accordance with Ark. Sup. Ct. Rule 4-3(h), the record has been reviewed for adverse rulings objected to by appellant but not argued on appeal, and no such errors were found. For the aforementioned reasons, the judgment of conviction is affirmed.

Affirmed.