Tracy Trinette CALLOWAY *v.* STATE of Arkansas

CR 97-398 . 953 S.W.2d 571

Supreme Court of Arkansas
Opinion delivered October 9, 1997

144

*Jeff Rosenzweig*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kelly Terry*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. This appeal arises out of the murders of three children in Little Rock and the attempted murder of their mother. The appellant, Tracy Trinette Calloway, was convicted of three counts of murder in the first degree and one count of criminal attempt to commit murder in the first degree. She was sentenced to a total term in prison of 132 years. Her appeal raises three issues: (1) the propriety of a non-model jury instruction on accomplice liability, (2) the prosecutor's placing her own character at issue in closing argument, and (3) the trial court's discretion in refusing to grant defense counsel surrebuttal argument following the prosecutor's rebuttal argument. We affirm the judgments of conviction.

On June 4, 1995, Riley Dobi Noel, Terry Carroll, Curtis Cochran, and Tracy Calloway were riding in Little Rock in Cochran's car and, according to Calloway, "getting high" on drugs. They went to the home of Mary Hussian, where Calloway got out of the car and followed Noel and Carroll to the house. Just before they entered the house, Noel handed her a handgun, and she testified that she returned it immediately. Noel burst into the house, and Calloway followed, stopping just inside the doorway. Noel told three children in the residence to get down on the floor, and Calloway testified that she told them to do what Noel said. She watched Noel shoot each of the children in the head and kill them. The victims were Malak Hussian, age 10; Mustafa Hussian, age 12; and Marcel Young, age 17. According to Curtis Cochran, the murders were in retaliation for Yashica Young's involvement in the death of Noel's brother. Yashica Young was another child of Mary Hussian. Following the murders, Calloway testified that she ran from the house with Carroll.

On June 6, 1995, the Little Rock Police Department focused its investigation on a search of Calloway's neighborhood in an effort to locate a suspect named "Tracy," and Calloway surrendered herself to police officers that same day. Calloway gave a full statement indicating that she was with the young men at the time of the murders but stating that she was not aware of an intention to commit the killings.

At trial, the prosecutor's theory of the case against Calloway was one of accomplice liability. Calloway's defense was that she did not know what Noel and Carroll intended to do at the Hussian house and that she did not assist them in any way in the commission of the murders. The prosecutor presented testimony from Curtis Cochran, who was driving the vehicle that day. Cochran testified that everyone in the car knew where they were going and what Noel intended to do because Noel announced it in the car. According to Cochran, Noel gave Calloway a .45 caliber handgun while they were in the car, and she still had it when they went to the Hussian house.

Jack Thomas, a neighbor of the victim, also testified for the State and stated that he saw Calloway run from the Hussian house and that it appeared as though she was carrying a gun. Kyle Jones testified that he arrived at the Hussian residence with his fiancee, Marcel Young, and saw three people standing in the carport: Noel, Cochran, and Calloway. The threesome asked Marcel and Kyle if Yashica Young was home, and Kyle said that he would check. Kyle and Marcel entered the house, and Kyle went to the back of the home to tell Marcel's mother, Mary Hussian, that they were home. He heard someone burst in through the front of the house and heard Marcel scream. Kyle and Mary Hussian ran toward the front of the house and were intercepted by Carroll, who was carrying a shotgun. They retreated to the bedroom. Kyle went into the bathroom and closed the door. Mary Hussian hid behind the bed and dialed 911. Kyle testified that he heard three shots come from the front room and that he heard the shotgun blast in the bedroom just before he escaped through the window. Kyle eventually came back to the house and told police officers what he had seen.

Mary Hussian told the same story to the jury as Kyle did. She testified that when she hid behind the bed to call 911, Carroll yelled for her to come out from behind the bed. She pleaded with him not to kill her or her children. She eventually rushed Carroll, and they fought for control of the shotgun. The shotgun discharged in the struggle, and the shot went through the roof. Mary Hussian gained control of the gun and chased Carroll back through the house, where she saw her three murdered children lying on the floor. Carroll left through the front door. Mary Hussian saw three people in the house, but could only identify Carroll and Noel and not Calloway.

The State also contended at trial that Calloway's original statement to the Little Rock police officers and her trial testimony were in conflict. She first told police officers that she was in the car and that Cochran and she picked up Carroll and Noel, but at trial she testified that the threesome picked her up to give her a ride home. She also testified at trial that she did not see any guns in the car until the group was about to go into the Hussian house. However, it was established at trial that two weapons were used at the murder scene — a .45 caliber pistol and a shotgun. Calloway admitted that Carroll was in the back seat of the two-door car with her but maintained that she did not see the shotgun.

The jury convicted Calloway of the four charges and subsequently sentenced her as stated above.

Calloway's first assignment of error is that the trial court used a model jury instruction, AMCI 2d 401, instead of the amended AMCI 2d 401 proffered by her. AMCI 2d 401, which was given to the jury, reads as follows:

> In this case, the State does not contend that Tracy Calloway acted alone in the commission of the offenses of Capital Murder and Criminal Attempt to Commit Capital Murder. A person is criminally responsible for the conduct of another person when she is an accomplice in the commission of an offense.
>
> An accomplice is one who directly participates in the commission of an offense or when causing a particular result is an element of an offense, acting with respect to that result with the

kind of culpability sufficient for the commission of that offense, she:

> Solicits, advises, encourages, or coerces the other person to engage in that conduct causing the result; or aids, agrees to aid, or attempts to aid the other person in planning of the conduct causing the result.[1]

Calloway sought to add the following language relating to "mere presence":

> Mere presence, acquiescence, silence or knowledge that a crime is being committed, in the absence of a legal duty to act, is not sufficient to make one an accomplice.

The language was refused, and defense counsel proffered the amended instruction for the record.

█ In reviewing the trial court's decision to use a model jury instruction over a non-model instruction, this court has held that the trial court should not use a non-model instruction unless there is a finding that the model instruction does not accurately reflect the law. *See Williams v. State*, 329 Ark. 8, 946 S.W.2d 678 (1997); *Hill v. State*, 318 Ark. 408, 887 S.W.2d 275 (1994); *Moore v. State*, 317 Ark. 630, 882 S.W.2d 667 (1994). In support of her contention that the model instruction should include a "mere presence" component, Calloway cites several cases which have held that mere presence is not enough to establish that an individual was an accomplice. *See Vickers v. State*, 313 Ark 64, 852 S.W.2d 787 (1993); *Ford v. State*, 296 Ark. 8, 753 S.W.2d 258 (1988); *Spears v. State*, 280 Ark. 577, 660 S.W.2d 913 (1983).

█ This court has twice specifically rejected the argument that AMCI 2d 401 should be altered to reflect the notion that mere presence is not enough to establish accomplice liability. *See Williams*, 329 Ark. at 21, 946 S.W.2d at 688; *Webb v. State*, 326 Ark. 878, 935 S.W.2d 250 (1996). Our reasoning for these holdings is sound. In order to prove that a person is an accomplice under AMCI 2d 401, one must prove that the defendant was

---

[1] AMCI 2d 401 was given as modified at the request of defense counsel to include language from Ark. Code Ann. § 5-2-403(b) (Repl. 1993), relating to assistance in causing a particular result.

engaged in activity which aided in the commission of the crime and, thus, was not merely present. If the State proves that a person was present when a crime was committed but does not further prove beyond a reasonable doubt that person in some way participated in the crime, the State has not met its burden. It would be redundant for the trial court to instruct the jury on what does *not* give rise to accomplice liability in addition to what does. *Moore*, 317 Ark. at 636, 882 S.W.2d at 671.

■ Calloway attempts to distinguish *Webb v. State, supra*, by contending that this court found that the facts in *Webb* did not support a "mere presence" instruction. However, this argument does not contend with the more recent decision in *Williams v. State, supra*, where this court specifically stated that *Webb* rejected the requirement of a "mere presence" jury instruction. We held in both *Williams* and *Webb* that AMCI 2d 401 accurately and completely reflects the law of accomplice liability. Thus, Calloway's argument on this point has already been settled by prior case law and is meritless.

Calloway's second point arises out of comments made by the prosecutor during closing argument. The prosecutor made the following statement:

> And another thing about these oaths. I take an oath. He's exactly right. I took an oath as a deputy prosecutor. So, when he stands up here and says that Curtis Cochran tailored his testimony to suit me, then he maligns me. Well, ladies and gentlemen, I took an oath. So, if you believe that what I did was told Curtis Cochran what to say —

Defense counsel objected to the prosecutor's argument and moved for a mistrial. The trial court denied the motion but did admonish the jury that "counsel are not allowed to inject their own personalities in the trial," and that the jury should not consider such comments or make them a part of their deliberations. Calloway now contends that the statement made by the prosecutor was so prejudicial that it could not be corrected by an admonition and that a declaration of a mistrial was warranted.

■ This court has held that a mistrial is such an extreme remedy that it should not be used unless there has been error "so

prejudicial that justice cannot be served by continuing the trial or when the fundamental fairness of the trial itself has been manifestly affected." *Puckett v. State*, 324 Ark. 81, 89, 918 S.W.2d 707, 711 (1996). A mistrial should only be declared when an admonition to the jury would be ineffective. *Id.* Moreover, the trial court is given broad discretion to control counsel in closing arguments, and this court will not disturb the trial court's decision absent a manifest abuse of discretion. *Lee v. State*, 326 Ark. 529, 932 S.W.2d 756 (1996). We said in *Lee*: "[R]emarks that require a reversal are rare and require an appeal to the jurors' passions." 326 Ark. at 532, 932 S.W.2d at 758.

In this case, the trial court made a specific finding that defense counsel had "invited" the prosecutor's rebuttal by questioning the integrity of the prosecutor in closing argument. Defense counsel repeatedly made reference to the fact that Curtis Cochran had changed his story only after the prosecutor talked to him. The prosecutor's rebuttal sought to correct any inference that she told Cochran to lie. This court has recognized that when one party uses improper closing remarks the other party may respond with what would ordinarily be improper remarks. *Id;* *Larimore v. State*, 317 Ark. 111, 977 S.W.2d 570 (1994); *McFadden v. State*, 290 Ark. 177, 717 S.W.2d 812 (1986). We have no doubt that the prosecutor should be allowed to counter any suggestion of suborning perjury.

Furthermore, the trial court immediately sustained defense counsel's objection to the prosecutor's injecting personalities into her argument and immediately admonished the jury to that effect, thereby curing any potential prejudice. Having observed the argument first hand, the trial court was in the best position to determine if there was prejudice, and we defer to its judgment. *Bullock v. State*, 317 Ark. 204, 876 S.W.2d 579 (1994). There was no abuse of discretion in this regard.

For her final point, Calloway contends that the trial court erred in not granting defense counsel's request for surrebuttal argument to correct misstatements made by the prosecutor. At the end of the prosecutor's rebuttal, the defense counsel moved the court to allow him a surrebuttal argument because the prose-

cutor had misrepresented Calloway's testimony in her rebuttal argument. Specifically, defense counsel claimed that the prosecutor had argued that Calloway contended that the two other State witnesses, Jack Thomas and Kyle Jones, were lying. In fact, Calloway never specifically stated that they were lying, but her testimony did contradict those witnesses on several points. The trial court ruled in favor of the State and said: "Counsel if I allowed that [surrebuttal argument], I'm afraid there would never be an end to this trial."

■ ■ The trial court is given broad discretion to control counsel in closing arguments, and this court will not disturb the trial court's decision absent a manifest abuse of discretion. *Lee v. State, supra; Mills v. State*, 322 Ark. 647, 910 S.W.2d 682 (1995). In this case, there was no abuse of discretion. For one thing, defense counsel could have objected to any misstatements made by the prosecutor in her rebuttal argument.[2] For another, the prosecutor's arguments were logical inferences based on the testimony of the witnesses. It is logical to conclude that if a defendant testifies in a manner that completely contradicts a witness's testimony, there is an implication that the defendant is saying the witness is lying. This easily falls within the confines of permissible argument. There was no abuse of discretion in refusing to grant surrebuttal argument.

Affirmed.

---

[2] The court is aware that defense counsel did object to alleged factual misstatements during the prosecutor's initial closing argument, and the trial court raised the issue of whether that would be a comment on the evidence by the court.