Benfordene Butler SMITH *v.* STATE of Arkansas

CR 97-1190 974 S.W.2d 427

Supreme Court of Arkansas
Opinion delivered July 9, 1998

*Willard Proctor, Jr.*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Mac Golden*, Ass't Att'y Gen., for appellee.

RAY THORNTON, Justice. Appellant Benfordene Butler Smith appeals her conviction for the January 26, 1996 slaying of Burt McKinley. A jury convicted appellant of capital-felony murder and sentenced her to life imprisonment without parole.

Appellant raises four points on appeal. We find no error and affirm.

We need not recount the facts in great detail because the question of sufficiency of the evidence is not raised by appellant or preserved for our review. Burt McKinley was stabbed to death in his Stuttgart residence during a robbery. The murder weapon, a knife, came from an apartment that appellant and Pam Isbell shared. It appears that following several hours of drug use, the two roommates and Greg Martin decided to rob McKinley to get money for more drugs. While there was inconsistent testimony as to which of the participants stabbed the victim, all three were at or near the murder scene at the time of the slaying, and then rented a motel room and renewed their drug use following McKinley's death. The murder weapon and a bloody jump suit that appellant had been wearing before the robbery were recovered near McKinley's house.

The issues on appeal include whether the trial court committed error in (1) refusing to give a non-model jury instruction on the legal requirement for status as an accomplice; (2) allowing evidence of appellant's prior conviction; (3) allowing rebuttal evidence of prior bad acts of appellant; and (4) allowing the admission of statements made by appellant. We address each of these issues in the order presented.

*I. Accomplice-Status Instruction*

At trial, the court refused to give the following instruction, proffered at appellant's request:

> Mere presence, acquiescence, silence or knowledge that a crime is being committed, in the absence of a legal duty to act is not sufficient to make a person an accomplice.

The trial court stated that it felt that this instruction was covered in AMI Crim. 2d 403, which was given, along with AMI Crim. 2d 401 on the same subject. The trial court further noted, in refusing to give appellant's proffered instruction, that nothing prevented appellant from arguing in closing that mere presence,

acquiescence, silence, or knowledge that a crime was committed was insufficient to support a finding that she was an accomplice.

Appellant asserts that the trial court erred in refusing to give the proffered instruction. She argues that AMI Crim. 2d 403 was inadequate because it does not state that an individual may be present and not be an accomplice, and that because AMI Crim. 2d 403 does not state the law, a non-AMI instruction should be allowed.

■ We addressed this issue in *Calloway v. State*, 330 Ark. 143, 953 S.W.2d 571 (1997). In *Calloway*, the appellant argued that the trial court erred in refusing to give a proffered jury instruction, which is identical to the one before us, in conjunction with AMI Crim. 2d 401. *Calloway*, 330 Ark. at 148, 953 S.W.2d at 573. We stated that in reviewing the trial court's refusal to give the non-model jury instruction, the trial court should not use a non-model instruction unless it finds that the model instruction does not accurately reflect the law. *Id.* (citing *Williams v. State*, 329 Ark. 8, 946 S.W.2d 678 (1997); *Hill v. State*, 318 Ark. 408, 887 S.W.2d 275 (1994); *Moore v. State*, 317 Ark. 630, 882 S.W.2d 667 (1994)). We adhered to our previous decisions in which we had declined to alter AMI Crim. 2d 401 to reflect the legal principle that mere presence is not enough to establish accomplice liability, finding that our previous reasoning on the issue was sound. *Id.* (citing *Williams*, 329 Ark. at 21, 946 S.W.2d at 688; *Webb v. State*, 326 Ark. 878, 935 S.W.2d 250 (1996)).

■ We have adopted the reasoning that under AMI Crim. 2d 401 and 403, both of which were given in this case, the State must prove that the accused was engaged in activity that aided in the commission of the crime and, by implication, that the accused was not merely "present." *Id.* If the State proves that an individual was present when a crime was committed but does not prove beyond a reasonable doubt that the individual participated in some way in the crime, then the State has not met its burden. *Id.* Following this rationale, it would be redundant for the trial court to instruct the jury on what does not give rise to accomplice liability in addition to what does. *Id.* In both *Williams* and *Webb,* we rejected the requirement of a "mere presence" instruction and

held that AMI Crim. 2d 401 accurately and completely reflects the law of accomplice liability. *Id.*

■ Based on our clear language in *Calloway* and its predecessors, we affirm on this point.

## II. Admissibility of Appellant's Prior Conviction

Prior to trial, appellant filed a motion in limine to exclude the introduction of evidence relating to a prior conviction for which she was incarcerated over ten years before. Although the trial court ruled at the time that the prior conviction was inadmissible under Ark. R. Evid. 609 (1998) because more than ten years had passed, the trial court ruled during trial that the State could question one of appellant's character witnesses about her knowledge of the convictions. Based on the latter ruling, appellant's counsel chose to elicit the information about the prior conviction during his direct examination of appellant when she was recalled. On appeal, appellant argues that the ruling admitting evidence of her prior conviction violated Ark. R. Evid. 609.

■ Under Rule 609, a party may attack the credibility of a witness with evidence that she has previously been convicted of a felony or crime involving dishonesty or false statement, as long as not more than ten years have elapsed since the date of conviction or release from confinement. Ark. R. Evid. 609(a) and (b) (1998). Appellant's reliance on Ark. R. Evid. 609 is misplaced. Rule 609 applies only when one is attempting to show that the witness herself has been convicted of a crime. *Reel v. State*, 288 Ark. 189, 702 S.W.2d 809 (1986); *Barker v. State*, 21 Ark. App. 67, 728 S.W.2d 204 (1987).

■ Appellant's Rule 609 argument raises a relevancy question under Ark. R. Evid. 405(a). *See Barker*, 21 Ark. App. at 66-67, 728 S.W.2d at 210. Evidence must pass muster under our relevancy inquiry based on Rules 404 and 405 of the Arkansas Rules of Evidence. First, a defendant must establish that the character evidence is admissible under Rule 404, which states in pertinent part:

(a) Character Evidence Generally. Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

(1) Character of accused. Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same.

Ark. R. Evid. 404(a)(1) (1998). Once the defendant establishes the admissibility of the character evidence under Rule 404, Rule 405 establishes the methods of proof that may be used. *Gooden v. State*, 321 Ark. 340, 902 S.W.2d 226 (1995) (citing *Smith v. State*, 316 Ark. 407, 872 S.W.2d 843 (1994)). Rule 405 provides that in cross-examining a defendant's character witness, it is permissible to inquire into the witness's knowledge of relevant specific instances of conduct. Ark. R. Evid. 405(a) (1998).

■ It is well established that a defendant may open the door to evidence that might otherwise have been inadmissible by producing a character witness. *See, e.g., Gooden*, 321 Ark. at 342, 902 S.W.2d at 227; *Wilburn v. State*, 289 Ark. 224, 711 S.W.2d 760 (1986); *Reel*, 288 Ark. at 190, 702 S.W.2d at 810. In *Gooden*, the appellant was accused of arson. He called a witness at trial who testified that the appellant had been with him the day of the fire and stated, "I don't believe he would do anything like that. I've been knowing him too long. He's not that type of guy." *Gooden*, 321 Ark. at 341, 902 S.W.2d at 227. The trial court ruled that by this testimony, the appellant had opened the door by placing his character in issue with the witness's statement that he "wouldn't do that sort of thing." *Id.* The trial court allowed the State to cross-examine the witness by asking him if he was aware that the appellant had been previously convicted of four felonies. We affirmed the trial court's decision concluding that the cross-examination was allowed not to show that the appellant had committed the arson, but to determine the weight to be given the character testimony of the witness. *Id.*

■ In reaching this conclusion, we relied principally on Rules 404 and 405 and on our decision in *Reel*, where we

explained the reason for the rule set out in Ark. R. Evid. 405(a) as follows:

> The policies behind rule 405(a) are, however, distinguishable from those underlying rule 609(a). The purpose of the cross examination of a character witness with respect to a prior offense is to ascertain the witness' knowledge of facts which should have some bearing on the accused's reputation. If the witness does not know that an accused was previously convicted of a crime, the witness' credibility suffers. If he knows it but then disregards it in forming his opinion of the accused, that may legitimately go to the weight to be given the opinion of the witness . . .
>
> \* \* \*
>
> By presenting a character witness an accused opens the door which would otherwise be closed. If he wants us to know what his reputation is, we must be able to determine the witness' awareness of the relevant facts.

*Reel,* 288 Ark. at 191-92, 702 S.W.2d at 810-11; *see also Rawls v. State,* 327 Ark. 34, 937 S.W.2d 637 (1997).

The trial court ruled on the basis of appellant's motion in limine that the State could not question appellant about her conviction for possession of marijuana with intent to deliver because it was outside the ten-year limit. Later, the trial court ruled that if appellant opened the door by producing a character witness, it would conduct a sidebar conference at that time and determine whether the State would be allowed to cross-examine the witness regarding her knowledge of the prior conviction. The trial court also stated that it would give the jury an appropriate limiting instruction.

■ ■ Relevancy of evidence is within the sound discretion of the trial court, subject to reversal only if an abuse of discretion is demonstrated. *TB of Blytheville v. Little Rock Sign & Emblem,* 328 Ark. 688, 946 S.W.2d 930 (1997). The trial court's ruling in the case before us follows the principles established by the foregoing case law. Furthermore, the prior conviction came in because appellant herself took the stand and admitted it in direct examination rather than waiting and risking its admission during cross-examination. We find no abuse of discretion, and we affirm the trial court's ruling.

### III. Admissibility of Appellant's "Prior Bad Act" Through a Rebuttal Witness

Appellant's third point concerns whether the trial court erred in allowing Isbell to testify on rebuttal about appellant's violence toward her. At trial, appellant called Urella Johnson as a character witness in her defense. Johnson not only testified that appellant was a nonviolent person, but also *that she knew of no occasion in which appellant had been violent toward Pam Isbell.*

The State then offered Isbell as a rebuttal witness. Isbell testified that appellant had on one occasion attempted to cut her with a knife, and that appellant had been the initial aggressor in several fights between the two of them. Isbell testified that she had filed charges against appellant after she had tried to cut her. Appellant contends that the trial court erred in allowing the State to present this testimony concerning specific instances of violence because only character evidence of reputation or opinion may be used for rebuttal.

As a general rule, proof of other crimes or bad acts is never admissible when it is only relevant to show that the accused is a bad person. *Spohn v. State*, 310 Ark. 500, 837 S.W.2d 873 (1992). However, when the accused raises the issue of her pertinent character trait, then the State is permitted to introduce rebuttal evidence on the trait, and evidence that is otherwise inadmissible may become admissible. Ark. R. Evid. 404(a)(1); *see also Landrum v. State*, 320 Ark. 81, 894 S.W.2d 943 (1995); *Wilburn*, 289 Ark. at 228, 711 S.W.2d at 762.

We considered a similar question in *Spohn* where the appellant raised the issue of his character by testifying on direct examination that his relationship with the victim was not violent and that he had never had thoughts of harming her. *Spohn*, 310 Ark. at 503, 837 S.W.2d at 874. The appellant further testified that he had never been charged with an act of violence. *Id.* On cross-examination, the State inquired whether the appellant had ever held a woman in Sedona, Arizona, against her will. The appellant responded that he had experienced a "blackout" in Sedona. *Id.* We ruled that the trial court did not err in permitting the State to respond to this testimony because the appellant

had opened the door by testifying about his peaceful character. We found the following language instructive:

> Ordinarily, if the defendant chooses to inject his character into the trial in this sense, he does so by producing witnesses who testify to his good character. By relating a personal history supportive of good character, however, the defendant may achieve the same result. Whatever the method, once the defendant gives evidence of pertinent character traits to show that he is not guilty, his claim of possession of these traits — but only these traits — is open to rebuttal by cross-examination or direct testimony of prosecution witnesses.

*Id.* at 503, 837 S.W.2d at 874-75 (citing 1 John W. Strong, *McCormick on Evidence* §§ 190 & 186 (4th ed. 1992)).

 Appellant argues that *Kellensworth v. State*, 275 Ark. 252, 631 S.W.2d 1 (1982), requires reversal of the trial court's decision. We disagree. In *McFadden v. State*, 290 Ark. 177, 717 S.W.2d 812 (1986), we examined *Kellensworth* and carefully distinguished two types of situations that may arise in cases such as this. We pointed out that in such cases as we cited under Point II above, we have held that a party opens the door to rebuttal testimony showing bad character by giving direct evidence of good character. *Id.* We differentiated this situation from that involved in *Kellensworth*, where we held that evidence of good character may not be rebutted with evidence of bad acts. We stated that Rule 404(b) does not preclude introduction of evidence of a pertinent character trait if the evidence is relevant to the main issue of the guilt or innocence of the accused and does not merely show the accused bad's character or action in conformity. *Id.*

In the case at bar, appellant raised the character issue. Appellant's counsel procured Johnson's statement on direct examination that appellant was not a violent person and that she had no knowledge of any instances where appellant had ever been violent towards Pam Isbell. By raising this issue regarding the pertinent character trait of appellant's nonviolent nature, appellant opened the door for the State to call Isbell to rebut Johnson's testimony.

 Admissibility of rebuttal evidence is discretionary with the trial court, and we will not reverse absent a showing of abuse

of that discretion. *Schalski v. State*, 322 Ark. 63, 907 S.W.2d 693 (1995). We conclude that the trial court's ruling on this issue did not constitute an abuse of discretion, and we affirm on this point.

## IV. Admissibility of Appellant's Custodial Statements

For her final point on appeal, appellant urges reversal based on the trial court's denial of her pretrial motion to suppress her custodial statements. Appellant here challenges (1) whether the statements were voluntarily made and (2) whether the statements were made after a knowing and intelligent waiver.

After appellant filed a pretrial motion to suppress her custodial statements, the trial court held a hearing on April 1, 1996, during which the court stated: "the main thing we are doing is the motion to suppress . . . [appellant's] statement." The principal issue that the parties debated at the hearing was whether appellant's counsel, Denese Fletcher, phoned the jail after she was retained and requested that appellant not be questioned anymore. At the conclusion of the hearing, the parties were to brief the issue and provide phone records to substantiate whether Fletcher had made the alleged contact. From the record, it is unclear how, or if, the court specifically ruled on this after the briefing. However, just prior to the beginning of the trial, the trial court summarily denied all of appellant's pending motions, including the motion to suppress.

Appellant's pretrial motion to suppress was sufficient to raise the issue of the voluntariness of her custodial statement and to require the court to hear evidence out of the jury's presence. *Moore v. State*, 303 Ark. 1, 791 S.W.2d 698 (1990). The trial court met its obligation to have a hearing by holding the April 1, 1998 hearing. The State presented a witness, Detective Keith Connell, who testified regarding appellant's custodial statements. Also, appellant presented her counsel, Fletcher, as a witness, and she testified that at some time after appellant retained her, she had requested that appellant not be questioned.

Appellant relies on our decision in *Rankin v. State*, 329 Ark. 379, 948 S.W.2d 379 (1997), where we remanded a case to the trial court to conduct a hearing on whether the appellant's

custodial statements should be suppressed. This situation is different because the court did hold a hearing on the suppression issue and later denied appellant's motion. Beyond that, the burden was on the appellant to obtain a ruling. *See Wright v. State*, 327 Ark. 558, 940 S.W.2d 432 (1997).

 A statement made while the accused is in custody is presumptively involuntary, and the burden is on the State to prove, by a preponderance of the evidence, that a custodial statement was given voluntarily and was knowingly and intelligently made. *Humphrey v. State*, 327 Ark. 753, 940 S.W.2d 860 (1997). We make an independent review of the totality of the circumstances surrounding the confession to determine whether appellant knowingly, voluntarily, and intelligently waived his constitutional rights. *Davis v. State*, 330 Ark. 76, 953 S.W.2d 559 (1997). We reverse only if we determine that the trial court's finding was clearly erroneous, viewing the evidence in the light most favorable to the State. *Id.*

 We have pointed out that there are two components in the inquiry into the validity of a defendant's waiver. *Humphrey,* 327 Ark. at 760, 940 S.W.2d at 863. First, we examine whether the statement was voluntary. *Id.* The "voluntary statement" argument addresses whether the statements were the product of a free and deliberate choice rather than intimidation, coercion, or deception. *Id.* (citing *Colorado v. Spring*, 479 U.S. 564 (1987) and *Moran v. Burbine*, 475 U.S. 412 (1986)). We look at the following factors to aid us in making our determination: "age, education, and intelligence of the accused, lack of advice as to his constitutional rights, length of detention, repeated and prolonged nature of questioning, or the use of physical punishment." *Id.* at 760, 940 S.W.2d at 864.

 Second, we examine whether the waiver was knowingly and intelligently made. *Id.* The "waiver of rights" argument focuses upon whether *the waiver* was made with a "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it," as well as whether the accused made the choice, "uncoerced by police, to waive his rights." *Id.*

Appellant, in a pretrial motion, moved to suppress all five custodial statements that were subsequently admitted at trial. We review these statements to determine whether the trial court's rulings were clearly erroneous.

*A. Custodial Statement No. 1, January 27, 1996, early morning*

Appellant made her first statement when the police picked her up for questioning in the early morning hours of January 27, 1996. The police informed appellant of her rights pursuant to *Miranda v. Arizona*, and she indicated that she understood and signed her waiver-of-rights form. At this time, she stated, "I didn't kill Burt McKinley. I asked Kenny for ten dollars, but I did not talk about killing Burt."

██ ██ Based on the factors which aid us on review, we conclude that the trial court did not err in admitting this statement because it was voluntary and was the product of a knowing and intelligent waiver. Appellant was forty-two at the time of these statements. She was advised of her constitutional rights, and signed a waiver form indicating that she understood them. She was picked up for questioning and promptly released after indicating that she had no knowledge of the incident. No evidence was presented that Detective Connell used any coercive tactics or threats to compel the statement, or that the form of the questioning was repeated or prolonged. Detective Connell had been informed that appellant had been smoking crack on the evening in question, and he testified that he observed no signs of intoxication and that appellant did not appear to be incapable of giving a statement due to the influence of drugs or alcohol. However, even if she had been intoxicated, that issue would be a question of fact regarding whether she lacked capacity to waive her rights intelligently, and would be a question for the trial court to resolve. *Standridge v. State*, 329 Ark. 473, 951 S.W.2d 299 (1997). Also, evidence of intoxication reflects on the credibility of the statement, not its admissibility. *Id.*

██ Based on these facts, we conclude that this statement was the product of appellant's free and deliberate choice and that her waiver was made with a full awareness of her rights and a

choice to waive those rights. Therefore, the trial court did not err in admitting this statement into evidence.

B. *Custodial Statement No. 2, January 27, 1996, afternoon*

Appellant was released and subsequently picked up around 1:50 p.m. on the same day, after the police officers found additional evidence linking her to the crime. Again, the officers read appellant her rights, and she signed and initialed the waiver form, acknowledging that she understood her rights. This time, when the officer showed her the blue coveralls, she stated, "That's my clothes. I want a lawyer." The officers testified that the questioning ceased at that point.

■■ Police officers may interrogate a suspect until she unequivocally invokes her right to counsel, at which time the interrogation must cease. *Davis*, 330 Ark. at 87 n.2, 903 S.W.2d at 562 n.2. Appellant's statement identifying her jump suit is admissible because it occurred after she signed her waiver form and before she invoked her right to counsel. We conclude that the trial court's admission of this statement was not clearly erroneous.

C. *Custodial Statement No. 3, January 29, 1996*

The third statement was taken on January 29, around 4:53 p.m., after appellant initiated contact with Detective Connell. Detective Connell again read appellant her rights, and she signed another waiver form. In her statement, appellant said that she had been with Pam Isbell and Greg Martin in her apartment at the time of McKinley's death. She also identified her jump suit and repeatedly asserted that she did not know anything about the incident.

■ During custodial questioning, an individual may terminate all questions by indicating that she wishes to remain silent. *Davis*, 330 Ark. at 87, 953 S.W.2d at 562. However, if an accused, who had previously expressed a desire to deal with the police only through counsel, initiates further communication or conversation, she waives the previous invocation of the right to counsel. *Stephens v. State*, 328 Ark. 81, 941 S.W.2d 411 (1997) (citing *Edwards v. Arizona*, 451 U.S. 477 (1981)).

■ Under the circumstances before us, we cannot say that the trial court's decision to admit this statement was clearly erroneous because, although she had previously invoked her right to counsel, the evidence shows that appellant initiated this communication herself.

### D. Custodial Statement No. 4, February 1, 1996

On February 1, 1996, appellant gave her fourth statement while being interviewed by Investigator C.A. Beall and Sergeant John Howell of the Arkansas State Police. Appellant gave two statements at this time. She was yet again informed of her rights and signed a waiver form. The first statement was taken at 1:58 p.m., and the second at 3:13 p.m. In the first statement, appellant acknowledged that the coveralls and knife that the police possessed were hers, and she stated that she did not remember a lot of things from the day of the slaying because she was under the influence of alcohol and crack cocaine.

In the second statement, appellant related her version of the events on the night of McKinley's death. She recalled that she, Isbell, and Martin were drinking and smoking crack that afternoon when they hatched a plot to rob McKinley. Martin questioned her about McKinley and asked her if he could borrow a knife to "scare" McKinley. She said that Martin left and came back, telling appellant and Isbell to get a motel room. They then bought some more crack. She stated that Martin later told her that he had cut McKinley.

■ At the April 1 hearing on the pretrial motions, appellant argued that she retained counsel around February 1, 1996. However, appellant never reinvoked her right to counsel after she initiated contact with Detective Connell either on January 29 or February 4. Although Denese Fletcher testified that she contacted the police station sometime after February 1, the approximate date that appellant retained her as counsel, and instructed them to refrain from questioning appellant further, we have no other evidence supporting that assertion or indicating that appellant had any knowledge of the call. In *Moran v. Burbine*, 475 U.S. at 422, the Supreme Court concluded that an accused's knowledge, or

lack of knowledge, of outside events is irrelevant to her capacity to understand and voluntarily relinquish a known right. Further, appellant again signed and initialed a form indicating that she understood her rights and waived them prior to the state police officer's questioning.

■ No evidence of coercion or changed circumstances gives us reason to find that this statement was the product of anything other than appellant's free will. Again, we cannot say that the trial court's decision to admit this statement was clearly erroneous.

### E. Custodial Statement No. 5, February 4, 1996

Appellant gave her fifth statement to Detective Connell on February 4, 1997, at 5:37 p.m. Appellant sent a message through a matron that she wanted to speak to him and give a statement. Detective Connell read appellant her rights, and she again signed and initialed a statement indicating that she understood them. This statement was more detailed in its account than the February 1 statement. Appellant here said that she and Isbell accompanied Martin to McKinley's house. She said that she pointed out the house to Martin, and that she and Isbell went ahead and waited for Martin on the street. The account is consistent otherwise, but with more details of the evening. Detective Connell read the statement into evidence.

■ Appellant argues that the trial court erred in admitting this statement because she had invoked her right to counsel. In arguing that this contact was impermissible, appellant overlooks the fact that she reinitiated contact with Detective Connell on February 4. By reinitiating contact with Detective Connell, appellant waived her prior invocation of her right to counsel. *See Stephens,* 328 Ark. at 88, 941 S.W.2d at 415 (citing *Edwards v. Arizona,* 451 U.S. at 484-84). Because appellant reinitiated this contact with Detective Connell and signed another waiver-of-rights form, we cannot find clear error in the trial court's admission of her fifth statement under these circumstances.

*Ark. Sup. Ct. R. 4-3(h) Compliance:*

In accordance with Ark. Sup. Ct. R. 4-3(h), the record has been reviewed, and it has been determined that there were no reversible errors with respect to rulings on objections or motions prejudicial to appellant.

Affirmed.