SLIP OPINION

Cite as 2016 Ark. 343

# SUPREME COURT OF ARKANSAS

No. CR-15-1067

| | |
|---|---|
| JEREMY EDWARD WHALEN<br>APPELLANT | Opinion Delivered October 20, 2016 |
| V. | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT [NO. MC-2013-202] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE STEPHEN TABOR, JUDGE |
| | REVERSED AND REMANDED; MOTION TO TAKE JUDICIAL NOTICE DENIED; COURT OF APPEALS OPINION VACATED. |

**KAREN R. BAKER, Associate Justice**

This case is on petition for review from the Arkansas Court of Appeals. Appellant Jeremy Edward Whalen was convicted of driving while intoxicated–first offense after a bench trial in the Sebastian County Circuit Court. On appeal to the court of appeals, Whalen argued that (1) the Fourth Amendment to the United States Constitution, along with article II, section 15 of the Arkansas Constitution, required reversal of his conviction based on the illegally conducted sobriety checkpoint; and (2) the circuit court erred by failing to recognize the lack of probable cause to support any further detention of Whalen. The court of appeals reversed and dismissed Whalen's conviction based on Whalen's first point on appeal. *Whalen v. State*, 2015 Ark. App. 706, 478 S.W.3d 249.

On December 29, 2015, the State petitioned this court for review of the court of

SLIP OPINION

appeals' opinion. As bases for review, the State contended that this case presented issues on which there is a perceived inconsistency in the decisions of the Court of Appeals and the Supreme Court, issues involving federal constitutional interpretation, issues of substantial public interest, and issues needing clarification or development of the law. Ark. Sup. Ct. R. 1–2(b)(2), (3), (4), (5) and 2–4(c)(ii) and (iii). On January 28, 2016, we granted the State's petition for review. When we grant a petition for review, we treat the appeal as if it had been originally filed in this court. *Whaley v. Beckham*, 2016 Ark. 196, 492 S.W.3d 65 (citing *Sullivan v. Coney*, 2013 Ark. 222, 427 S.W.3d 682).

The facts related to this appeal stem from a sobriety checkpoint conducted by the Arkansas State Police ("ASP"). On September 20, 2012, the ASP conducted a sobriety checkpoint on the Exit 11 ramp on Interstate 540 in Fort Smith. Whalen was stopped and subsequently arrested and charged with driving while intoxicated–first offense. On July 29, 2014, a bench trial was held.

During the bench trial, Corporal Dwight Lee testified that during the checkpoint at issue, he made contact with Whalen. Corporal Lee testified that after he had smelled alcohol on Whalen, he retrieved his portable breathalyzer, but Whalen refused to submit to testing. Corporal Lee then asked Whalen pull over to the right shoulder of the roadway and instructed Trooper Brandon Margis to make contact with Whalen; Corporal Lee continued to conduct the checkpoint. With regard to establishing checkpoints, Corporal Lee testified that if the supervisors do not assign the checkpoint, "I will make a call and say, you know, we're going to do a checkpoint. And they just usually tell us, you know, it's okay, but they don't actually

know where, because they would like for us to do them quite often." Corporal Lee explained that he would generally make the call and pick the location of the checkpoint and "would call the other guys and say, 'Hey, we're going to be here at such and such a time.' " As for the checkpoint at issue, Corporal Lee testified that checkpoint location was "most likely" at his discretion. Corporal Lee testified that as the senior officer in the field, he decided whether to allow traffic to come through if traffic got backed up. Corporal Lee testified that the officer in the field had discretion to determine what would happen during the checkpoint, and the supervisor would be called only if something major occurred, like a collision or a chase. Decisions regarding what to do with the individuals whom the officer comes into contact with, the flow of traffic, and the location, are left to the discretion of the field officer. Corporal Lee testified that the officers do not keep records of the number of cars they stop; "[w]e keep count of, the activity -- if we wrote a ticket, or anything like that." As to the submission of a written plan to the supervisor, Corporal Lee testified that, "once we generate all the activity, we do the ASP-20 with all the numbers on it, and then we submit it to the supervisor." Corporal Lee further testified that "normally what we do is we will just do a checkpoint, and send in the information to the supervisor, after we collect it or whatever. And even if we don't do any activity on it, we still have to send one, because they want to know what we were doing at that time." However, Corporal Lee explained that the supervisors do not have any direct input in planning the checkpoints; they are notified through the submission of the written plan. Corporal Lee testified that because the supervisors expect the checkpoints to be performed every weekend, the field officers do not

mention the checkpoints to the supervisors until after the checkpoint has been performed.

Trooper Margis testified that after Corporal Lee instructed Whalen to pull over, he made contact with Whalen. Trooper Margis testified that he could smell intoxicants coming from Whalen. Trooper Margis testified that there was no sergeant at the checkpoint at issue and that the most senior person present was Corporal Lee.

At the close of the evidence, Whalen objected to the constitutionality of the checkpoint.

On July 31, 2014, the circuit court entered a written judgment finding as follows:

The motions to suppress and/or dismiss of Defendant are hereby denied. The Court finds Defendant guilty of Driving While Intoxicated – First Offense beyond a reasonable doubt[.]

The circuit court sentenced Whalen to pay fines and costs of $690, serve twenty-four hours in jail with time suspended upon Whalen's completion of the defensive driving course within thirty days of the date of the judgment, complete Level I treatment, and complete one victim-impact class as recommended in his presentence screening report.

On appeal, Whalen argues two points: (1) The Fourth Amendment of the United States Constitution and article II, section 15 of the Arkansas Constitution require reversal of his convictions based on the illegally conducted sobriety checkpoint and (2) the circuit court erred in its failure to recognize the lack of probable cause to support any further roadside detention of Whalen. Upon review of a trial court's denial of a motion to suppress, we make an independent determination based on the totality of the circumstances; we view the evidence in the light most favorable to the appellee, and we reverse the trial court's ruling

SLIP OPINION

only if it is clearly erroneous or against the preponderance of the evidence. *Mullinax v. State*, 327 Ark. 41, 44, 938 S.W.2d 801, 803 (1997) (citing *Norman v. State*, 326 Ark. 210, 931 S.W.2d 96 (1996)).

We now turn to Whalen's first point on appeal. In support of his argument that the checkpoint did not meet constitutional scrutiny, Whalen contends that the checkpoint was not conducted pursuant to a neutral and explicit plan and that the individual field officers were given too much discretion. The State responds that the record establishes that there were explicit, neutral criteria for determining which vehicles to stop. The State further responds that the ASP Sobriety Checkpoint Plan indicated that the checkpoint was conducted in compliance with ASP policies and procedures governing the conduct of the officers.[1]

"The Fourth Amendment, of course, 'applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest.' " *Brown v. Texas*, 443 U.S. 47, 50 (1979). When a law-enforcement officer stops and restrains a person, the officer has "seized" that person, and the Fourth Amendment requires that the seizure be reasonable. *Id.* In *Brown*, the United States Supreme Court explained,

> The reasonableness of seizures that are less intrusive than a traditional arrest, depends "'on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers.'" Consideration of the constitutionality of such seizures involves a weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty.

---

[1]On March 31, 2016, the State filed an unopposed motion requesting that this court take judicial notice of the existence and content of the 2012 and 2015 ASP Policies and Procedures Manuals. Because these manuals were not before the circuit court, we deny the State's motion to take judicial notice.



A central concern in balancing these competing considerations in a variety of settings has been to assure that an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field. To this end, the Fourth Amendment requires that a seizure must be based on specific, objective facts indicating that society's legitimate interests require the seizure of the particular individual, or that the seizure must be carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers.

443 U.S. at 50–51 (citations omitted) (quoting *Pennsylvania v. Mimms*, 434 U.S. 106 (1977)).

Accordingly, *Brown* requires us to consider the three-prong balancing test when reviewing the

permissibility of vehicle stops made on less than reasonable suspicion of criminal activity. Our

focus is on the third prong-the severity of the interference with individual liberty.

## I. *Neutral and Explicit Plan*

For the reasons discussed below, we hold that the State has failed to present evidence

that the checkpoint was "carried out pursuant to a plan embodying explicit, neutral limitations

on the conduct of individual officers." In order to satisfy the reasonableness requirement of

the Fourth Amendment, the State must present evidence to show that the checkpoint was

carried out pursuant to a previously established objective and neutral plan that was designed

by supervising officers in order to limit the conduct of the field officers. *Delaware v. Prouse*,

440 U.S. 648 (1979). We have held that the plan for the checkpoint is not required to be in

writing. *Mullinax*, 327 Ark. 41, 938 S.W.2d 801. In *Mullinax*, we explained that the

roadblock at issue had been carried out pursuant to a constitutionally sufficient plan where the

field officer participating in the roadblock testified that the particular procedures and location

of the roadblock had been discussed with the superior officer.

Here, Corporal Lee testified that the supervisors did not provide direct input on the

plan for the checkpoint. In fact, the supervisors were not notified of the checkpoint until after the checkpoint had been performed, through the ASP-20 Form. Unlike the field officers in *Mullinax*, Corporal Lee's testimony demonstrates that the field officers received no guidance from their supervisors. Thus, we hold that the State has failed to demonstrate the existence of a preexisting plan for the checkpoint.

## II. *Field Officer Discretion*

We also find merit in Whalen's argument that the field officers exercised unfettered discretion in establishing and conducting the checkpoint. The United States Supreme Court has held that "[t]he essential purpose of the proscriptions in the Fourth Amendment is to impose a standard of 'reasonableness' upon the exercise of discretion by government officials, including law enforcement agents, in order 'to safeguard the privacy and security of individuals against arbitrary invasions . . . .' " *Prouse*, 440 U.S. at 653–54 (citations omitted) (quoting *Marshall v. Barlow's Inc.*, 436 U.S. 307 (1978)).

In *State v. Hicks*, the Tennessee Supreme Court identified two factors that are critical to a finding that the field officers' discretion was properly limited: (1) the decision to set up the roadblock in the first instance cannot have been made by the officer or officers actually establishing the checkpoint, and (2) the officers on the scene cannot decide for themselves the procedures to be used in operating the roadblock. 55 S.W.3d 515, 533 (Tenn. 2001). The *Hicks* Court explained that the "State must show that some authority superior to the officers in the field decided to establish the roadblock, particularly as to its time and location, and that the officers adhered to neutral standards previously fixed by administrative decision or

regulation." *Id.* Finally, the court stated that these factors are so essential to the reasonableness of a roadblock that the absence of either factor will result in the invalidation of the stop. *Id.*

We adopt the reasoning of the Tennessee Supreme Court in *Hicks* and hold that the State's failure to demonstrate that the field officers' discretion was properly limited requires this court to declare Whalen's checkpoint stop unconstitutional. As to the first *Hicks* factor, the decision to implement the checkpoint, including the location, time, and duration of the checkpoint, was left to the sole discretion of Corporal Lee, a field officer. Turning to the second *Hicks* factor, despite the State's argument to the contrary, that the field officers' discretion was limited because the vehicles were stopped in a preestablished, systematic fashion, the record demonstrates otherwise. The record demonstrates that all pertinent decisions regarding the procedures used in operating the checkpoint were left to the unfettered discretion of the field officers. In the present case, the State did not present any evidence regarding the limitations placed on the field officers' discretion. Accordingly, based on the absence of some authority superior to that of the field officers who did not take part in the implementation of the checkpoint plan, there was, in effect, unfettered discretion given to the field officers. Thus, the checkpoint at issue was unconstitutional.

We hold that, without suspicion of individualized criminal conduct, the seizure of Whalen through the checkpoint stop was unreasonable. Further, any evidence obtained as a result of the checkpoint should have been suppressed. Accordingly, because there is no evidence to support Whalen's conviction and sentence, we reverse and remand.

Because we reverse and remand on Whalen's first point on appeal, we do not consider Whalen's second point on appeal.

Reversed and remanded for an order consistent with this opinion; motion to take judicial notice denied; court of appeals opinion vacated.

WOOD, J., concurring.

**RHONDA K. WOOD, Justice, concurring.** This appeal has an inadequately developed record. We do not know the Arkansas State Police's policy and plans for handling sobriety checkpoints. In addition, the witnesses' testimony was vague, and the State failed to introduce any written policies and procedures. Our review is limited to the record before us, and in this instance there simply was no evidence of a neutral and explicit plan that could pass constitutional muster. I join the majority as to this point.

I write separately because I believe it is unnecessary for this court to deviate from our precedent and adopt the factors the Tennessee Supreme Court set out in *State v. Hicks*, 55 S.W.3d 515 (Tenn. 2001). By adopting these factors, the majority's opinion further erodes reasonable local discretion regarding sobriety checkpoints. This additional step is unnecessary to reach the decision in this case. Nor must law enforcement comply with these factors to conduct a constitutional sobriety checkpoint.

The majority cites *Delaware v. Prouse*, 440 U.S. 648 (1979) to introduce why it is adopting the Tennessee factors for evaluating field-officer discretion. However, *Prouse* does not require such erosion of local discretion. In fact, in *Prouse*, the United States Supreme Court stated only that "the discretion of the official in the field be circumscribed, *at least to*

*some extent.*" *Id.* at 661 (emphasis added). The Eighth Circuit Court of Appeals has stated that "[w]e find no authority, either in the Constitution or the common law, which demands that an officer be . . . denied reasonable discretion which is necessary to conduct a series of traffic stops occurring in a free and unstructured world." *Brouhard v. Lee*, 125 F.3d 656, 660 (8th Cir. 1997).

By adopting the Tennessee factors, this court goes much further than the Constitution requires. Indeed, the Tennessee court's decision was explicitly based on the Tennessee Constitution. *Hicks*, 55 S.W.3d at 533. Neither the United States Constitution nor the Arkansas Constitution requires us to adopt factors that will inevitably result in micromanaging law enforcement. I do not join the majority's opinion as to the second point.

BRILL, C.J., joins.

*Johnny Clay Collins II*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Rebecca Kane*, Ass't Att'y Gen., for appellee.

*Law Offices of Bennett & Williams*, by: *Brad J. Williams*; *Island & Huff*, by: *Bell Island*, *pro hac vice*, amicus curiae in support of appellant.