SLIP OPINION

Cite as 2017 Ark. 218

# SUPREME COURT OF ARKANSAS

**No.** CR–16–831

| | |
|---|---|
| ROOSEVELT RASHAUN COLEMAN<br>APPELLANT | **Opinion Delivered:** June 8, 2017 |
| V. | APPEAL FROM THE CRITTENDEN COUNTY CIRCUIT COURT [NOS. 18CR–11–652; 18CR–11–1315; 18CR–15–938] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE RALPH WILSON, JR., JUDGE |
| | AFFIRMED IN PART; REVERSED AND REMANDED IN PART. |

**ROBIN F. WYNNE, Associate Justice**

Roosevelt Rashaun Coleman was sentenced to seventy-two months' probation following his conviction for residential burglary in case no. CR–2011–652. He was sentenced to 120 months' suspended imposition of sentence following his conviction for residential burglary in case no. CR–2011–1315. Coleman was tried on a charge of aggravated robbery with a firearm enhancement in 2016. During the 2016 trial, the trial court revoked the probation and suspended imposition of sentence imposed in the earlier cases. Coleman was convicted on the charge of aggravated robbery and the firearm enhancement. He was sentenced as a habitual offender to life imprisonment for the aggravated robbery plus fifteen years' imprisonment on the firearm enhancement. He was sentenced to 240 months' imprisonment on each revocation. Coleman now appeals from his convictions and the revocations. On appeal, he makes the following arguments regarding his convictions: (1) the trial court erred in denying his motion in limine regarding

the treatment of his two prior convictions for residential burglary as violent for purposes of sentencing under the habitual-offender statute; (2) the trial court erred in denying his motion to suppress his statement; and (3) the trial court erred in denying his motion in limine to exclude certain testimony and admitting hearsay. Because there is merit in appellant's second argument, we reverse and remand as to the aggravated-robbery conviction and the firearm enhancement. Appellant raises no allegation of error as to the revocations. Accordingly, we affirm the revocations.

On the night of September 14, 2015, two men wearing masks robbed a Dollar General store in Marion, taking approximately $700 in cash. One of the men, who was wearing a green-and-white-striped shirt, had a gun and hit the assistant manager in the head during the robbery. Witnesses were unable to identify the perpetrators, apart from being able to describe them as African-American males. Officers recovered a one-dollar bill, a ten-dollar bill, a cash-out receipt from the store, and a black cash drawer in a nearby beanfield. Officers also located a striped shirt matching the one worn by one of the perpetrators and a black LG cell phone approximately ten feet from the shirt that came back as belonging to appellant. One officer noticed suspicious behavior by someone driving a car near the store. When he encountered the driver, who was identified as Nicola Walters, and asked her why she was there, she eventually stated that she was there to pick up appellant. While she was speaking to the officers, Walters received a phone call from a male who asked if she had been let go yet. When she replied that she had not, the caller hung up.

2

SLIP OPINION

Appellant was arrested on November 4, 2015, and the next day was interviewed by Detective Freddy Williams with the Marion Police Department. Appellant indicated several times during the interview that he no longer wished to speak to Detective Williams. The interview continued, and appellant eventually confessed his involvement in the robbery. Prior to trial, appellant moved to suppress his statement to Detective Williams on the basis that it had been obtained in violation of his right against self-incrimination. The trial court denied the motion. Appellant moved to bar the State from soliciting testimony regarding the statements made by Nicola Walters, contending that they were inadmissible hearsay. That motion was denied. Finally, appellant moved to prevent his prior convictions for residential burglary from being treated as violent offenses for the purposes of habitual-offender sentencing, arguing that applying the prior convictions in that manner was prohibited because the statutory amendment classifying the offense of residential burglary as violent for habitual-offender purposes was passed after his convictions for residential burglary. The trial court denied this motion as well. Appellant was tried, convicted, and sentenced as described above. This appeal followed.

Appellant argues that the trial court erred by denying his motion to suppress his statement to Detective Williams because it was obtained in violation of his Fifth Amendment right to remain silent and not incriminate himself. Upon review of a trial court's denial of a motion to suppress, we make an independent determination based on the totality of the circumstances; we view the evidence in the light most favorable to the appellee, and we reverse the trial court's ruling only if it is clearly erroneous or against the

preponderance of the evidence. *Whalen v. State*, 2016 Ark. 343, at 4–5, 500 S.W.3d 710, 713 (2016).

In *Whitaker v. State*, 348 Ark. 90, 95, 71 S.W.3d 567, 570–71 (2002), we set out the applicable law on this issue as follows:

> A statement made while an accused is in custody is presumptively involuntary, and the burden is on the State to prove, by a preponderance of the evidence, that a custodial statement was given voluntarily and was knowingly and intelligently made. *Lacy v. State*, [345 Ark. 63, 44 S.W.3d 296; *Smith v. State*, 334 Ark. 190, 974 S.W.2d 427 (1998). A defendant may cut off questioning at any time by unequivocally invoking his right to remain silent. *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). When the right to remain silent is invoked, it must be "scrupulously honored." *Miranda* [*v. Arizona*, 384 U.S. 436, 479 (1966)]; *Mosley*, 423 U.S. at 103; *Hatley v. State*, 289 Ark. 130, 133, 709 S.W.2d 812, 814 (1986). Our Criminal Rules follow in this mold and provide that a police officer shall not question an arrested person if that person indicates "in any manner" that he does not wish to be questioned. Ark. R. Crim. P. 4.5.
>
> A defendant may also waive an invocation of her right to silence. *Bunch v. State*, 346 Ark. 33, 57 S.W.3d 124 (2001). Specifically, answering questions following a statement that attempts to invoke the right to remain silent may waive that right by implication. *Jones v. State*, 344 Ark. 682, 42 S.W.3d 536 (2001); *Bowen v. State*, 322 Ark. 483, 911 S.W.2d 555 (1995); *Standridge v. State*, 329 Ark. 473, 951 S.W.2d 299 (1997). The accused may change her mind and decide to talk to law enforcement officials. *Willett v. State*, 322 Ark. 613, 911 S.W.2d 937 (1995) (citing *Michigan v. Jackson*, 475 U.S. 625 (1986); *Edwards v. Arizona*, 451 U.S. 477 (1981); *Bussard v. State*, 295 Ark. 72, 747 S.W.2d 71 (1988); *Coble v. State*, 274 Ark. 134, 624 S.W.2d 421 (1981)).

The recording of appellant's interview with Detective Williams was divided into two parts. The first part of the interview took place in an interview room and was captured on video. During this first part of the interview, the following relevant exchanges took place:

APPELLANT:   -- I got a question.

DETECTIVE WILLIAMS:  Sure, man, what's up?

APPELLANT:  I don't [phonetic] want to talk to you [inarticulate] –

DETECTIVE WILLIAMS:  Uh-huh (affirmative response).

APPELLANT:   -- it's just, is that a recorder or camera right there?

DETECTIVE WILLIAMS:  Probably is; yeah.

DETECTIVE WILLIAMS:  I want [phonetic] to talk to you outside, I don't – I don't want to talk to you.

. . . .

APPELLANT:  Man, you [intelligible] I'm ready for you to me, take me to the jail.

DETECTIVE WILLIAMS:  You don't want to talk anymore about it?

APPELLANT:  Naw, man.

. . . .

APPELLANT:   Mr. Freddy, I ain't gonna lie to you or nothin' like this, it's just, I don't [phonetic] wanna talk no more.

. . . .

APPELLANT:  Can I get some water?

DETECTIVE WILLIAMS:  Yeah, I can get you some water.  You don't want to talk more about it?

Appellant:  Naw.

DETECTIVE WILLIAMS:  You sure you don't want to explain your side of it?  Get the details of your side of it.  I tell you, details go a long ways.

APPELLANT:  No, sir.

. . . .

APPELLANT:  I ain't gonna lie to you, I'll talk to you straight if it was just me and you

DETECTIVE WILLIAMS:  Uh-huh (affirmative response). Yeah.

APPELLANT:   I've always talked to you straight up [phonetic] but I ain't gonna [phonetic] –

DETECTIVE WILLIAMS:  What's the difference in talkin' to me straight up in the hallway or here?  What's up?

APPELLANT:  Well, I just [inarticulate] –

DETECTIVE WILLIAMS:  You would feel more comfortable?

APPELLANT:  Yes, sir.

DETECTIVE WILLIAMS: [Unintelligible] talk to me in another room there, in another office there?  Just me and you in another office in there?  Away from everybody? I've got an office across the hall that nobody uses, it used to be our assistant chief's and nobody's in that room.  It's totally up to you.  In the hallway people be walkin' up and down the hallway.  It's totally up to you. I mean, –– I mean, I [unintelligible], I believe – I believe you're gonna be remorseful, like you told me earlier you almost cried about the situation –

APPELLANT:  What about the [inarticulate], water-fountain –

DETECTIVE WILLIAMS:  Do what now?

APPELLANT: [Inarticulate], water-fountain?

DETECTIVE WILLIAMS:  Water-fountain, just stand out back here?

APPELLANT:  Yeah.

. . . .

Following this exchange, the two men moved to a different location, and the interview continued, captured by Detective Williams in an audio recording.  During this second portion of the interview, the following relevant exchanges occurred:

APPELLANT:  I really didn't want to talk to you because I thought you had a little recorder on you.  I don't know do you do or not, but like, I – I was going to rob a dope boy and that came across.

DETECTIVE WILLIAMS:  Uh-huh (affirmative response).

. . . .

APPELLANT:  You know, I was going to tell you the truth and that, but like, I know them room had recorders and –

DETECTIVE WILLIAMS:  Almost all of them do, yeah.

APPELLANT:  Yeah, like, I know, I ain't dumb.  I was, like, man I might as well talk to him outside.  I know he probably have a recorder on him then, so.

DETECTIVE WILLIAMS:  Well, you know what we talk about anyway, I can put it in my paperwork, right?

APPELLANT:  Yes, sir.

DETECTIVE WILLIAMS:  Okay.

APPELLANT:  I was like, well, he's goin' to have a recorder out there anyway.  I'd rather talk to him outside.

DETECTIVE WILLIAMS:  Uh-huh (affirmative response).

APPELLANT:  And let him have a recorder than just be up in there on camera with a recorder.  But it's for real [phonetic] that I done it.  I was planning on doing something else, and like, he brung [sic] it up to me, so I – come on.  And –

In denying appellant's motion to suppress his statement, the trial court found that appellant's invocation of his Fifth Amendment right to remain silent was not unequivocal and that he voluntarily resumed answering Detective Williams's questions.  The trial court's finding is clearly erroneous.  During the first part of the interview, appellant said "I don't want to talk to you."  When asked on two separate occasions if he wanted to keep talking about the robbery, he stated "naw" and indicated that he wanted to be returned to the jail.  Appellant's statements constitute an unequivocal invocation of his right to remain silent.  *See Whitaker*, 348 Ark. at 98, 71 S.W.3d at 572 (stating that "'no' in common parlance is not an equivocal answer but one of acknowledged clarity and specificity").  Instead of honoring appellant's invocation of his right, Detective Williams continued to ask him

SLIP OPINION

questions and continually prodded him to keep talking. Any contention that appellant waived his invocation of right to remain silent is unavailing, because, as we stated in *Whitaker*, "waiver has its place after a right to silence has been raised, but the interrogating officer must first cease questioning." 348 Ark. at 98, 71 S.W.3d at 572. Here, appellant unequivocally invoked his right to remain silent, Detective Williams never ceased questioning him, and appellant therefore could not have waived the earlier invocation of his right to remain silent. The trial court clearly erred in refusing to suppress appellant's statement.

The State argues that any error by the trial court in admitting the confession is harmless in light of the overwhelming evidence of appellant's guilt. To conclude that a constitutional error is harmless and does not mandate reversal, this court must conclude beyond a reasonable doubt that the error did not contribute to the verdict. *See Schalski v. State*, 322 Ark. 63, 907 S.W.2d 693 (1995). Here, this requires that we excise the confession and determine whether the remaining evidence shows beyond a reasonable doubt that the error did not contribute to the verdict. *See Criddle v. State*, 338 Ark. 744, 749–50, 1 S.W.3d 436, 439–40 (1999). We conclude that the remaining evidence does not show beyond a reasonable doubt that the error did not contribute to the verdict. The entirety of the evidence linking appellant to the crime, apart from his confession, is the cell phone found in the beanfield and Nicola Walters's statement that she was parked in a neighborhood near the store to pick him up. This evidence is not sufficient to render the erroneous admission of appellant's confession harmless. Due to the trial court's prejudicial error in admitting



appellant's custodial statement, the convictions for aggravated robbery and the firearm enhancement are reversed and remanded.

Although we often do not address additional issues on appeal after we reverse and remand on an issue presented, we will consider one of appellant's other points on appeal here because it is likely to recur on retrial. *See Scamardo v. State*, 2013 Ark. 163, at 9, 426 S.W.3d 900, 905. Appellant argues that the trial court erred in denying his motion in limine regarding the treatment of his two prior convictions for residential burglary as violent for purposes of sentencing under the habitual-offender statute. Pursuant to Arkansas Code Annotated section 5-4-501(d)(1) (Supp. 2015), a defendant who is convicted of a felony involving violence as enumerated in section 5-4-501(d)(2) and who has been previously convicted of two or more felonies involving violence as enumerated in subsection (d)(2) shall be sentenced to an extended term of imprisonment. Aggravated robbery is a Class Y felony. Ark. Code Ann. § 5-12-103(b) (Repl. 2013). Application of section 5-4-501(d) to a conviction for a Class Y felony results in a mandatory sentence of life imprisonment. Ark. Code Ann. § 5-4-501(d)(1)(A). Prior to 2015, the offense of residential burglary was not one of the enumerated offenses in section 5-4-501(d)(2). It was added to the list with the passage of Act 895 of 2015. (Act of Apr. 1, 2015, No. 895, § 3, 2015 Ark. Acts 3551, 3552). Appellant argues that, because his convictions for residential burglary occurred in 2011, prior to the enactment of Act 895, the application of section 5-4-501(d) to his conviction for aggravated robbery violates his right to due process and the prohibition on ex post facto laws, as Act 895 does not contain any language to indicate that it should be applied retroactively and he was not on notice at the time of his convictions for residential

burglary that the offense would later be determined a violent felony under the habitual-offender statute.

Appellant's argument is unavailing. This court has previously held that habitual-offender statutes such as section 5-4-501(d) are not ex post facto laws. *Sims v. State*, 262 Ark. 288, 556 S.W.2d 141 (1977). This court has likewise previously addressed the due-process argument regarding an allegation of lack of notice, holding that an amendment such as Act 895 places a defendant on notice that future criminal acts may subject him or her to enhanced punishment. *See Garrett v. State*, 347 Ark. 860, 69 S.W.3d 844 (2002). The fact that appellant was not aware in 2011 that the habitual-offender statute would be amended in the future is irrelevant, as it was not the punishment for those offenses that was enhanced. The trial court correctly denied appellant's motion to bar the use of his prior convictions to enhance his sentence for the aggravated-robbery conviction.

Appellant's final point is that the trial court erred by denying his motion in limine to exclude testimony by police regarding statements by Nicola Walters as inadmissible hearsay. As this point involves an evidentiary ruling by the trial court, we decline to address it given that we do not know what evidence will be presented on this issue on retrial.

Affirmed in part; reversed and remanded in part.

*Robert M. "Robby" Golden*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Amanda Jegley*, Ass't Att'y Gen., for appellee.