Cite as 2025 Ark. App. 65

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CR-24-374

| | |
|---|---|
| | **Opinion Delivered** February 5, 2025 |
| SANTIAGO VASQUEZ, JR.<br>APPELLANT | APPEAL FROM THE GREENE COUNTY CIRCUIT COURT<br>[NO. 28CR-19-227] |
| V. | |
| | HONORABLE RANDY F. PHILHOURS, JUDGE |
| STATE OF ARKANSAS<br>APPELLEE | REVERSED AND REMANDED |

**KENNETH S. HIXSON, Judge**

This is a rape case with a lengthy procedural history resulting in appellant Santiago Vasquez being convicted after a third jury trial of five counts of rape committed against appellant's then girlfriend's eight-year-old daughter, Minor Victim (MV), for which he was sentenced to eighty years in prison. Vasquez now appeals, raising two arguments. Vasquez argues (1) that the trial court erred in permitting the State to cross-examine him about prior order-of-protection cases in violation of Arkansas Rules of Evidence 404(a)(1), 608, and 613; and (2) the trial court erred in denying his motion to suppress evidence obtained from his cell phone, which were images of prepubescent minors depicting a child's buttocks, a female child's genitalia, and a child wearing only underwear. We agree with Vasquez's first point on appeal, and we reverse and remand for a new trial.

The procedural history is as follows.  In the first trial, the jury convicted Vasquez of five counts of rape and sentenced him to twenty-five years in prison.  Vasquez appealed, and in *Vasquez v. State*, 2022 Ark. App. 328, 652 S.W.3d 586 (*Vasquez I*), we reversed and remanded for a new trial.  In *Vasquez I*, we held that the trial court abused its discretion in allowing a sexual-assault nurse examiner, who testified as a lay witness, to present expert testimony about the frequency of normal findings in child sexual-assault examinations and that children often delay disclosure of sexual abuse.  We further held in *Vasquez I* that this error was not harmless, stating that the victim's credibility was the primary issue in the case, and there was a reasonable probability that the erroneously admitted opinion of the nurse—designed to lead the jury to infer that abuse occurred despite the lack of physical findings and the delayed disclosure of abuse—impacted and affected the jury's credibility finding.

After our remand in *Vasquez I*, a second trial was held, but the jury deadlocked, resulting in a mistrial.  After a third jury trial, Vasquez was convicted of five counts of rape and sentenced to eighty years in prison. Vasquez now appeals from those convictions in the third jury trial.

Before trial, Vasquez filed a motion to suppress the images of prepubescent minors found on his cell phone on the basis that the affidavit for the search warrant failed to set forth sufficient facts to establish probable cause to search the phone.  The trial court held a hearing on Vasquez's motion to suppress and denied the motion, finding that although the affidavit for the search warrant was defective and lacked probable cause, the good-faith exception to the exclusionary rule applied.  The trial court noted that although the affidavit

did not contain information that images of child pornography were seen on Vasquez's phone, the officer who swore out the affidavit was aware that the victim had seen such images, and the officer verbally communicated that information to the issuing judge prior to preparing the affidavit.

At the third jury trial, the testimony revealed that MV was six years old and was living with her mother, Abigail Sweat, in Portageville, Missouri, when Abigail became pregnant with Vasquez's child. Vasquez came to Abigail's house to help take care of the baby after he was born, and Vasquez eventually moved in with Abigail and MV. MV began calling Vasquez dad, and the family later relocated to Paragould, Arkansas. At first, they lived in a two-bedroom apartment, and they later moved to a three-bedroom house. At both locations, there was an L-shaped sectional sofa in the living room where Vasquez often slept, and MV would sleep with him a couple nights a week. Vasquez's teenage sons from a prior relationship would also stay with them on occasion, and they would sometimes sleep on the sofa.

MV testified that Vasquez began sexually assaulting her at the Paragould apartment when she was eight years old. MV went into detail about the repeated incidents of abuse. She stated that while they slept on the sofa, Vasquez would put his fingers down her pants and touch her clitoris. On another occasion, Vasquez put his finger "in her rear." MV also stated that, while her mother was at work, Vasquez taught her how to masturbate him and that he made her masturbate him more than five times. On other occasions, Vasquez preformed cunnilingus on MV, and she once woke up on the sofa to find Vasquez

3

penetrating her vagina with his penis. MV also described how Vasquez repeatedly used a purple vibrator and a pink sex toy on her, which caused her vagina to "always be irritated." MV stated that the purple vibrator was kept in a toolbox in the kitchen and that Vasquez told her it was only for her and that she had to keep it hidden. MV stated further that Vasquez showed her images of child pornography on his phone, which included a young girl masturbating, a father and daughter engaging in sexual contact, and a man having sex with a little girl.

MV did not immediately report the sexual abuse to anyone, stating that she was scared and that Vasquez told her if she told anyone, she would go to jail and everyone would hate her. MV finally decided to report the abuse to her mother when she was nine years old, telling her mother that Vasquez had been "messing with [her] vagina." When MV's mother appeared to doubt the truth of the allegations, MV retrieved the purple vibrator from the toolbox and stated that Vasquez had used it on her. At that point, MV's mother believed her. MV's mother testified that "when a nine-year-old hands you a vibrator as proof of rape . . . MV knew it was proof of sexual assault . . . and the fact she knew exactly where to go get it . . . raised alarm bells." After that, MV's mother, Abigail, took MV and MV's younger brother and moved back to Portageville to live with Abigail's mother. They reported the abuse to the authorities, and MV was interviewed about the assaults and underwent a sexual-assault exam, which was normal. MV's medical history did include vaginitis, which is typically noted with people who are sexually active, but according to the testifying nurse, it may also be caused by bubble baths, laundry detergents, or improper wiping.

Officer Rhonda Thomas of the Paragould Police Department investigated the case and swore out an affidavit for a search warrant to search Vasquez's cell phone. The trial court issued a search warrant for Vasquez's phone, and three images of child pornography were found on the phone and admitted at trial.

Vasquez was interviewed by the police, and he acknowledged that he owned the purple and pink sex toys. He explained that he kept the purple vibrator in a toolbox, but it was off limits to the kids. He stated that he had not used the purple device yet and that Abigail was not aware he had it. Vasquez denied that he used the sex toys on MV or had any sexual contact with her.

Vasquez also testified at trial. He stated that he frequently slept on the L-shaped sofa in the living room and that MV was like his daughter and would sometimes sleep with him. He also testified that his two sons sometimes joined him on the sofa. Vasquez stated that he bought the purple vibrator with the intent to use it with Abigail but that he put it in the toolbox and never got around to it. Vasquez denied that he inappropriately touched or used sex toys on MV.

During the State's cross-examination of Vasquez, the State was permitted over Vasquez's objection to ask Vasquez questions about order-of-protection cases involving his girlfriend, Angel Spurlock, that occurred in August and September 2020, which was more than a year after Vasquez had been charged with the rapes in the instant case. In both instances, Angel filed for orders of protection against Vasquez, the first of which she later withdrew, and the second of which was granted. Vasquez argued that this evidence should

be excluded because there was no testimony at trial that he is violent and that the circumstances surrounding these orders of protection were not relevant to the allegation of whether or not he raped MV. The State argued that the evidence went to Vasquez's character and his credibility. The trial court permitted the cross-examination on these issues under Arkansas Rules of Evidence 404(a)(1), 608, and 613.

Based on the evidence presented, the jury found Vazquez guilty of five counts of rape and sentenced him to eighty years in prison. Vasquez now appeals, arguing first that the trial court erred in permitting the State to question him about the order-of protection cases, and next arguing that the trial court erred in denying his motion to suppress evidence obtained from his cell phone.

I. *The Trial Court Erred in Permitting the State to Cross-Examine Vasquez About Prior Order-of-Protection Cases Involving Altercations With His Girlfriend*

Vasquez first argues that the trial court erred in allowing the State to cross-examine him about order-of-protection cases involving his girlfriend, Angel, which occurred more than a year after MV and her mother had moved out of Vasquez's house and more than a year after he had been charged with raping MV. For the following reasons, we agree with Vasquez's argument.

Vasquez testified at the trial in his defense. During the State's cross-examination of Vasquez, the testimony revealed that in his police interview prior to trial, Vasquez never said anything to the police about his sons sleeping on the L-shaped sofa and that Vasquez claimed this for the first time in his testimony. The State pointed out that during the police

interview, Vasquez said his sons had their own room and slept there. In response to this inquiry, Vasquez testified that just because his sons have their own room does not mean they cannot sleep on the sofa, and he maintained that he did tell the police about his sons sleeping on the sofa in the police interview.

The prosecutor was looking through the transcript of the police interview for the precise language used by Vasquez and then asked: "Isn't it true that on August 8, 2020, in Paragould, you followed your girlfriend, Angel Spurlock, out to her car?" Vasquez objected to the line of questioning on the basis that his altercations with Angel were not relevant. The State argued that Vasquez had testified about the altercations previously during the proceedings on the orders of protection. The State argued that it thought Vasquez had lied in those proceedings about what happened during those altercations and that this line of questioning went to his credibility. The State argued further that the altercations with Angel Spurlock go to Vasquez's character, which it said had been put at issue. The trial court simply ruled, "It's cross-examination, overruled," and permitted the questioning.

The State then proceeded with this line of questioning over Vasquez's objection and asked Vasquez if he remembered that in August 2022,[1] he had followed Angel out to her car because she was going to Walmart and Vasquez wanted to go. Vasquez replied, "I really don't remember." The State stated, "You're not saying it didn't happen—you just don't remember—okay." The State asked Vasquez if he grabbed hold of her car and would not let

---

[1]It is unclear from the State's questioning whether these prior incidents occurred in 2020 or 2022.

7

go, and Vasquez said he did not remember. The State asked if he remembered grabbing her face, and Vasquez said he did not remember. That State asked if he remembered smacking her on the right side of her head, and Vasquez said no. When asked whether Angel had sworn out an order of protection, Vasquez stated that he remembered they had an argument and that Angel did file an order of protection but that Angel later withdrew it.

The State then continued this line of questioning and asked Vasquez about the next incident that happened a month later in September 2022. The State asked Vasquez if he had threatened to slice Angel's tires if she tried to leave him, and he said he did not remember. Vasquez was then asked whether he remembered throwing Angel's phone and shoes in the street. Vasquez stated that he remembered throwing Angel's phone in the street but did not remember throwing her shoes. Vasquez admitted that after that incident, Angel got an order of protection against him. The State then asked whether Vasquez remembered giving a statement under oath in September regarding this incident, and Vasquez agreed that he did give a statement at that time. Reading from Vasquez's prior statement given in the order-of-protection case, the State noted that he had been asked whether he remembered throwing Angel's phone and shoes in the street, and at that time, Vasquez answered that he did not recall.

After the State rested its case, the trial court clarified its ruling regarding the State's cross-examination of Vasquez about the order-of-protection cases. The trial court ruled that this was admissible under Arkansas Rules of Evidence 404(a)(1), 608, and 613.

8

Vasquez now argues on appeal that the State's cross-examination pertaining to the orders of protection was not admissible under any of the rules of evidence relied on by the trial court. Vasquez contends that this questioning was not relevant to the rape allegations, it was elicited to merely show that he is a bad person and was extremely prejudicial, and the admission of the evidence was an abuse of discretion.

We will not reverse a trial court's decision regarding the admission of evidence absent a manifest abuse of discretion. *Beard v. State*, 2020 Ark. 62, 594 S.W.3d 29. An abuse of discretion is a high threshold that does not simply require error in the trial court's decision but requires that the court acted improvidently, thoughtlessly, or without due consideration. *Id.* Moreover, an appellate court will not reverse a trial court's evidentiary ruling absent a showing of prejudice. *Id.*

Vasquez first argues that evidence of the orders of protection was not admissible as evidence of his character under Arkansas Rule of Evidence 404(a)(1). Rule 404(a)(1) provides:

> (a) *Character Evidence Generally.* Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
>
> (1) *Character of Accused.* Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same.

Once the admissibility of character evidence is established under Rule 404, Rule 405 establishes the methods of proof that may be utilized. *Smith v. State*, 316 Ark. 407, 411, 872 S.W.2d 843, 845 (1994). Rule 405(a) provides that once character evidence is admissible,

one permissible method is reputation or opinion testimony and, further, that "[o]n cross-examination, inquiry is allowable into relevant specific instances of conduct." *Id.*

An analogous situation to the present case occurred in *Hawksley v. State*, 276 Ark. 504, 637 S.W.2d 573 (1982). In *Hawksley*, the jury found Hawksley guilty of burglary, aggravated assault, and criminal mischief, with all the charges arising from a single episode. During the trial, the trial court permitted the State to introduce proof during its cross-examination of Hawksley—over Hawksley's objection—of disorderly conduct, escape, and criminal mischief that involved other persons and occurred several years before the charged incident. On appeal, the supreme court held that this evidence was not admissible as proof of a trait of character under Rule 404(a)(1), stating that Hawksley did not testify on direct examination to a character trait of nonviolence, so no rebutting evidence was admissible.[2] Having concluded that this evidence was not admissible and was prejudicial, the supreme court in *Hawksley* reversed and remanded for a new trial.

In the present case, as in *Hawksley*, Vasquez did not testify about his character for nonviolence on direct examination; therefore, the State had nothing to rebut. The only reason for introduction of evidence about the orders of protection involving Vasquez was to imply that he is a violent person who is capable of raping MV. The prosecutor even argued before the trial court that the altercations with Angel Spurlock "[go] to [Vasquez's] good

---

[2]The supreme court in *Hawksley* held further that this evidence was not admissible under Rule 404(b) to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. We observe that Rule 404(b) is also inapplicable here and was neither raised by the State nor relied on by the trial court.

character, which has been put at issue." However, this was not accurate. Therefore, we conclude that it was an abuse of discretion for the trial court to allow the State to introduce evidence of the orders of protection against Vasquez as evidence of character under Rule 404(a).

Vasquez next argues that the trial court abused its discretion when it allowed the evidence regarding the orders of protection to be admitted under Rule 608. Rule 608 provides in relevant part:

> (a) *Opinion and Reputation Evidence of Character.* The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

> (b) *Specific Instances of Conduct.* Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

Rule 608(b) provides that specific instances of conduct may be admissible only if probative of truthfulness or untruthfulness, and the conduct must concern the witness's character for truthfulness or untruthfulness. The supreme court has held that Rule 608(b) provides that the trial court may, if it finds good faith and the probative value of the testimony outweighs the prejudicial effect, allow questions about certain offenses if the misconduct relates to honesty and truthfulness. *Hawksley, supra.* Further, citing *Divanovich v. State*, 271 Ark. 104,

607 S.W.2d 383 (1980), the *Hawksley* court also held that questions concerning an appellant's violent nature are improper because they are "wholly unrelated" to a propensity for honesty. *Hawksley*, 276 Ark. at 507, 637 S.W.2d at 574. Pursuant to the supreme court's holding in *Hawksley*, we hold that the trial court abused its discretion in allowing the State to introduce evidence of the orders of protection against Vasquez under Rule 608 because his propensity for violence is "wholly unrelated" to a propensity for honesty.

Vasquez's last argument under this point is that the trial court abused its discretion in allowing testimony regarding the orders of protection to be admitted pursuant to Arkansas Rule of Evidence 613, which concerns prior inconsistent statements of witnesses. Rule 613(b) provides in relevant part:

> (b) *Extrinsic Evidence of Prior Inconsistent Statement of Witness*. Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require.

The State argued below that questions about the orders of protection were admissible under Rule 613(b) on the grounds that Vasquez had made prior inconsistent statements about the order-of-protection cases pertaining to Angel Spurlock. However, a close review of the transcript reveals that prior to the State's cross-examination, Vasquez never gave any testimony at trial about the order-of-protection cases. Without an inconsistent statement at the trial, extrinsic evidence of a prior inconsistent statement by a witness is not admissible under Rule 613(b). It was not until the State began asking improper questions about the

orders of protection—over Vasquez's objection—that the State or the trial court could even ascertain whether Vasquez had made any prior statements inconsistent with what he testified to during this cross-examination.  Although a prior statement that is inconsistent with a witness's trial testimony may be admissible for purposes of impeachment under Rule 613(b), *see Ball v. State*, 2012 Ark. App. 665, here, there was no trial testimony to impeach in this regard.  The questions about these orders of protection were thus not permissible under Rule 613(b) as prior inconsistent statements but were offered only to show Vasquez's propensity for violence.

Moreover, even after the State was permitted to fully question Vasquez about these prior altercations involving his girlfriend over his objection, the State identified only one potential prior inconsistent statement, which was that Vasquez now recalled throwing Angel's phone but during the earlier order-of-protection proceedings had testified that he did not recall throwing her phone.  This is arguably not even an inconsistent statement because in the prior statement he did not deny throwing the phone but stated only that he did not remember doing it.  As such, we hold that the trial court abused its discretion in allowing the State to introduce evidence of the orders of protection against Vasquez under Rule 613(b).

Therefore, we conclude that this questioning pertaining to the orders of protection was erroneously allowed under Arkansas Rules of Evidence 404(a)(1), 608, and 613.

That does not end our inquiry. We must also determine whether this error resulted in prejudice to Vasquez and whether we can declare the error harmless.  The State argues

that the error was harmless; however, in light of the circumstances presented, we do not agree.

We may declare an evidentiary error harmless if the evidence of guilt is overwhelming and the error is slight, *Johnston v. State*, 2014 Ark. 110, 431 S.W.3d 895; we will not reverse a trial court's evidentiary ruling absent prejudice. *Richardson v. State*, 2024 Ark. App. 353. Here, we cannot say that the error was slight or that Vasquez was not prejudiced by the trial court's erroneous ruling regarding admissibility of evidence of the orders of protection. In *Vasquez I*, we were also invited to employ harmless error but declined to do so. In *Vasquez I*, we held that the trial court erred in permitting the nurse to testify that sexual-assault exams are often normal and that children often delay reporting the abuse, stating that this testimony erroneously suggested to the jury that MV was being truthful about the rape allegations in the present case. In our harmless-error analysis in *Vasquez I*, we noted that credibility—particularly that of MV—was the primary issue in the case, and we declined to declare the error harmless, instead reversing and remanding for a new trial. During this third jury trial, credibility of the witnesses remained the primary issue in the case since there was conflicting testimony between MV and Vasquez about whether the alleged abuse occurred and there is a lack of physical evidence. There is a reasonable probability that the erroneously admitted evidence about the orders of protection taken out against Vasquez by Angel Spurlock—in an attempt to show that Vasquez is a violent, bad person—affected the jury's credibility findings. Therefore, the error was not harmless, and we reverse and remand for a new trial.

II. *The Trial Court Erred in Denying Vasquez's Motion to Suppress Evidence Obtained From His Cell Phone*

Vasquez's remaining argument is that the trial court erred in denying his motion to suppress evidence obtained from his cell phone because the affidavit for the search warrant lacked probable cause. This evidence consisted of three images of child pornography. Although we often do not address an additional issue on appeal after we reverse and remand on an issue presented, we will consider a point on appeal when it is likely to recur on retrial. *See Coleman v. State*, 2017 Ark. 218, 521 S.W.3d 483. Such is the case here because, on retrial, the suppression issue will likely be revisited. Therefore, we will address the merits of the suppression issue.

Officer Rhonda Thomas swore out the affidavit for search warrant, which provided:

FACT # 1: My name is Lieutenant Rhonda Thomas and I have been employed at the Paragould Police Department since December of 1994. I am currently assigned to the Criminal Division where I work felony cases and supervise the Criminal Division. I have extensive training and experience in working sexually oriented cases involving children.

FACT # 2: On 10/30/2018 a report was received by the Arkansas Department of Human Services in reference to 10-year-old [MV] who had disclosed sexual acts perpetrated on her by Santiago Vasquez.

FACT # 3: On 11/05/2018 [MV] was interviewed by a trained forensic interviewer. [MV] provided graphic details of at least 5 different acts of deviate sexual activity and identified Vasquez as the perpetrator.

FACT # 4: On 02/28/2019 Vasquez was arrested and at the time of his arrest had with him a black backpack. A warrant was obtained and the backpack was searched on 03/01/2019. A cell phone belonging to Vasquez was recovered.

15

FACT # 5: It is believed that there could be digital evidence on the phone related to the crime of rape being investigated by the Paragould Police Department.

Judge Dan Stidham issued a search warrant, which commanded law enforcement to search "the Iphone and seize any digital evidence recovered related to the crime of rape being investigated by the Paragould Police Department." Vasquez filed a motion to suppress, arguing that the affidavit lacked sufficient facts for probable cause to issue the warrant.

At the suppression hearing, the trial court heard testimony from the issuing judge—Judge Stidham—and Officer Thomas. Judge Stidham testified that he had worked with Officer Thomas and had reviewed her applications for search warrants thousands of times and that she had never provided any misleading information. Judge Stidham testified that, before Officer Thomas submitted her affidavit for the warrant, she called him on the phone and they discussed the case. During this conversation, Officer Thomas told Judge Stidham that, during the police interview with MV, MV described pictures that Vasquez had shown her on his cell phone that were pornographic images of children. Officer Thomas testified that she had talked to Judge Stidham at least twice before preparing the affidavit, and she confirmed that she had knowledge of the victim's statement about the child pornographic images and verbally related this to Judge Stidham but neglected to put this information in her affidavit. Officer Thomas believed she acted in good faith when she applied for the warrant and stated that she would never try to mislead anyone. Officer Thomas explained that she does not necessarily provide all the details in search-warrant affidavits in cases involving a minor victim in an attempt to protect the victim and that she instead

16

communicates some of this information verbally to the judge. Judge Stidham testified that Officer Thomas did, in fact, inform him of the interview with the victim and that the victim had stated that the appellant had shown her pornographic images of children on his cell phone.

The trial court ruled from the bench that Officer Thomas's affidavit was deficient and lacked probable cause because it failed to provide a nexus between the cell phone and the crime, observing that it was "missing a sentence" about MV's disclosure during her interview that Vasquez had shown her pornographic images of children on his cell phone. The trial court, however, ruled that the good-faith exception applied because nobody attempted to deceive anyone, and Officer Thomas and Judge Stidham had discussed this information before the application and issuance of the search warrant. The trial court denied Vasquez's motion to suppress, and Vasquez now argues that this was erroneous.

We review the denial of a motion to suppress de novo considering the totality of the circumstances, reviewing findings of historical fact for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the trial court and proper deference to the trial court's findings. *Yarbrough v. State*, 370 Ark. 31, 257 S.W.3d 50 (2007). We defer to the superior position of the trial court to evaluate the credibility of witnesses at a suppression hearing, and any conflicts in the testimony of witnesses are for the trial court to resolve. *Rainey v. State*, 2017 Ark. App. 427, 528 S.W.3d 288. We reverse only if the trial court's ruling is clearly against the preponderance of the evidence. *Menne v. State*, 2012 Ark. 37, 386 S.W.3d 451.

17

Because there was a lack of probable cause in the affidavit for search warrant and the trial court relied on good faith, we must focus on the good-faith exception to the exclusionary rule. The good-faith exception was set out in *United States v. Leon*, 468 U.S. 897 (1984). In *Leon*, the Supreme Court held that an officer's objective, good-faith reliance on a facially valid warrant will avoid application of the exclusionary rule in the event that the magistrate's assessment of probable cause is found to be in error. This is because the exclusionary rule is designed to deter police misconduct rather than to punish errors of judges and magistrates. *Sanders v. State*, 76 Ark. App. 104, 61 S.W.3d 871 (2001). In our determination of whether the good-faith exception applies, we look to the totality of the circumstances and may consider unrecorded testimony given to the magistrate as well as facts known by the officer but not communicated to the magistrate. *Moya v. State*, 335 Ark. 193, 981 S.W.2d 521 (1998).

The good-faith exception cannot cure certain errors, namely: (1) when the magistrate is misled by information the affiant knew was false; (2) when the magistrate wholly abandons his or her detached and neutral judicial role; (3) when the affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when a warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid. *Leon*, 468 U.S. at 914–15.

Vasquez argues that the good-faith exception did not apply here because the third and fourth errors listed above in *Leon* were present. Vasquez argues that the affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable

and also that the warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid. Vasquez argues that the affidavit itself states only that he had been accused by MV of multiple incidents of rape, which he states provides no reason to believe incriminating evidence would be found on his cell phone. Vasquez argues further that the warrant itself was overbroad because it permitted the police to search for "any digital evidence" on his cell phone.

We disagree with Vasquez's arguments and hold that the trial court's application of the good-faith exception in this case and its denial of Vasquez's motion to suppress was not clearly against the preponderance of the evidence. The information supplied in the affidavit was that MV had been interviewed by the police and provided graphic details of at least five different acts of deviate sexual activity and identified Vasquez as the perpetrator. The testimony at the suppression hearing showed that, during this interview, MV also described images of child pornography that Vasquez had shown her on his cell phone. Vasquez does not argue on appeal that, had this information been included in the affidavit, it would not have been sufficient to supply the probable cause to justify a search. And although this information was not in the affidavit, Officer Thomas testified that she knew about MV's allegations involving the child pornography and telephonically communicated this information to Judge Stidham prior to her application for and the issuance of the search warrant. In determining whether the good-faith exception applies, we may consider facts known by the officer but not communicated to the magistrate. *Moya*, *supra*. Here, not only did Officer Thomas know the facts that supported the issuance of the warrant, but she

communicated those facts to the issuing judge. Therefore, although the affidavit itself lacked probable cause to justify the search, the trial court correctly applied the good-faith exception based on the facts known to the officer who swore out the affidavit.

Finally, contrary to Vasquez's argument on appeal, the search warrant issued by Judge Stidham did not authorize the search and seizure of "any digital evidence" on Vasquez's cell phone as he suggests. The warrant directed a search of the cell phone and the seizure of any digital evidence related to the rape being investigated by the Paragould Police Department. And when the warrant was issued, both the applying officer and the issuing judge had knowledge that the victim had seen child pornography on Vasquez's cell phone. In *Osborn v. State*, 495 U.S. 103 (1990), the Supreme Court stated that evidence suggests that pedophiles use child pornography to seduce other children into sexual activity, which, according to MV's allegations, was precisely what Vasquez was doing here. For these reasons, we hold that the trial court did not err in denying Vasquez's motion to suppress.

III. *Conclusion*

In conclusion, we agree with Vasquez's first point on appeal, and we reverse and remand for a new trial because the trial court erroneously allowed the State to cross-examine Vasquez about the order-of-protection cases involving his girlfriend. Because the suppression issue is likely to recur on retrial, we address that issue as well, and we hold that the trial court did not err in applying the good-faith exception and denying Vasquez's motion to suppress the evidence obtained from his cell phone.

Reversed and remanded.

20

MURPHY, J., agrees.

BARRETT, J., concurs.

**STEPHANIE POTTER BARRETT, Judge, concurring**. I agree that the circuit court abused its discretion in allowing evidence of the orders of protection into evidence, and I agree that the warrant for Vasquez's cell phone lacked probable cause. I recognize that our case law after *Leon* now, more often than not, allows items seized using a deficient search warrant to be admissible under the good-faith exception.

I write to address Vasquez's separate argument that the warrant was so facially deficient that the executing officer could not reasonably presume that it was valid; therefore, the good-faith exception was not applicable.[1] As set forth in the majority opinion, the affidavit, as written, clearly lacked probable cause, but the search warrant was saved under the good-faith exception because there was testimony at the second suppression hearing that the officer seeking the search warrant had telephonically relayed to the judge issuing the search warrant that the minor victim had disclosed that Vasquez had shown her photographs of child pornography on his cell phone. However, the warrant did not specify items to be seized or even limit the search to photographic evidence, which was all the officer alleged was on the cell phone when obtaining the warrant, but instead broadly allowed a search of

---

[1]The circuit court stated after the suppression hearing that it would adopt the reasoning of the circuit court in the second trial until it was informed by defense counsel that the circuit court in the second trial granted the motion to suppress, finding the affidavit and subsequent warrant "so lacking in probable cause so as to render belief in its existence entirely unreasonable in the objective belief of a reasonably well-trained officer."

Vasquez's cell phone for "any digital evidence recovered related to the crime of rape being investigated by the Paragould Police Department."

As noted by Judge Griffen in his concurrence in *Stevens v. State*, 91 Ark. App. 55, 68–69, 208 S.W.3d 224, 234 (2005):

> An exception to a rule is supposed to be "[s]omething that is excluded from a rule's operation." *Black's Law Dictionary* 604 (8th ed. 2004). However, when the good-faith exception (1) renders powerless so much of the exclusionary rule as to make the original rule inapplicable more times than not, and (2) has narrowly-applied exceptions of its own, the "exception" has supplanted the rule.

Nevertheless, I agree with the State's assertion that this argument was not preserved for our review. The State contends that while the circuit court agreed that the search warrant was not supported by probable cause, it never ruled on Vasquez's additional argument that the search warrant was a facially invalid "general warrant," limiting its analysis instead to the sufficiency of the affidavit before applying the good-faith exception. Vasquez asserts that he argued the warrant was general in both his written motion and during the suppression hearing. While this is true, the circuit court limited its good-faith exception ruling to the affidavit, specifically stating, "I believe that this does fit into the good-faith exception, and that's what I'm addressing because that's all it is in front of me is whether or not they had the right to look into the contents of that phone based on the affidavit presented." The circuit court never addressed Vasquez's alternative argument that it was a facially invalid "general warrant," and this specific argument is not preserved for appellate review.

*Erin W. Lewis*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Walker K. Hawkins*, Ass't Att'y Gen., for appellee.